FILED
Crawford Co. Circuit Court
2nd Judicial Circuit
Date: 1/13/2023 12:44 PM
Angela Reinoehl

## IN THE CIRCUIT COURT
## CRAWFORD COUNTY, ILLINOIS

| | | |
|---|---|---|
| **JEREMY W. LANGLEY,** | ) | |
| **TIMOTHY B. JONES and** | ) | |
| **MATTHEW WILSON,** | ) | |
| | ) | |
| **v.** | ) | **Case No.**  2023CH2 |
| | ) | |
| **BRENDAN KELLY, in his official** | ) | |
| **capacity as Director of the Illinois** | ) | |
| **State Police, and COLE PRICE SHANER,** | ) | |
| **in his official capacity as States Attorney of** | ) | |
| **Crawford County, Illinois,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Comes now Plaintiffs Jeremy W. Langley, Timothy B. Jones and Matthew Wilson, by and through their attorneys, Thomas G. Maag and the Maag Law Firm, LLC, and for their cause of action, states as follows:

1.  This case is a challenge to purported Public Act 102-1116.

2.  At all times relevant, Plaintiffs Timothy B. Jones, Jeremy Wayne Langley and Matthew Wilson, are citizens and residents of Crawford County, Illinois.

3.  At all times relevant, Defendant Cole Price Shaner is the state's attorney of Plaintiffs county of residence

4.  At all times relevant, Defendant Brendan Kelly, is the Director of the Illinois State Police, and in such capacity has enforcement power over the challenged statute, and has personally testified in the Illinois General Assembly that he will enforce the statute at issue, and make the changes necessary at the state police to enforce same.  Defendant Shaner is the chief prosecutorial officer in Crawford County, and while many states

attorneys have announced they will not prosecute such actions, he has not so announced as of the time of this filing.

5. That at all times relevant, Defendants are being sued in their official capacities.

## COUNT I

6. That in January, 2023, in a lame duck session of the General Assembly, using a shell bill introduced as a bill dealing with Insurance Code examiners, in order to evade, through political games, the requirements of the Illinois Constitution to pass a bill into law, amended a bill into a wide ranging firearm and magazine ban, which is both poorly written, and unconstitutional.

7. That while the purported ban purports to grandfather the existing possession of such firearms, the grandfathering mechanism, as written, violates the Fifth and Fourteenth Amendments to the U.S. Constitution, as explained in *Haynes v. United States*, 390 U.S. 85 (1968), in that it requires persons, without being provided any form of immunity, and for use of and by a criminal law enforcement agency, to complete a form with the Illinois State Police, and provide information on current and past conduct, which can be used against that person in a criminal court, and admit possession of certain firearms that under state law are generally declared to be unlawful.

8. The statute further requires those who come into possession of such firearms in the future, to also disclose said information to the state police, and in the process, potentially incriminate themselves.

9. In that the registration or "endorsement" provision of the purported statute is unconstitutional, all provisions of the purported statute purporting to require registration or "endorsement", penalizing failure to so register and/or differentiating between

registered and unregistered, or disclosed and undisclosed firearms should be stricken, as unconstitutional, and preliminarily and permanently enjoined.

10. That Plaintiff's have no adequate remedy at law.

WHEREFORE, Plaintiffs humbly request that this Honorable Court enjoin defendants from enforcing any portion of the Public Act 102-1116 which requires persons in possession of any so called assault weapons to register them or otherwise disclosed them to the State Police, and in the process potentially incriminate themselves, and enjoining Defendants from taking any action against possessors of unregistered firearms on account of their status of being unregistered assault weapons, plus such other, further and different relief as allowed by law, plus costs and fees under 42 U.S.C. 1988.

## COUNT II

1 – 5   Plaintiff adopts and incorporates paragraphs 1 through 5 above.

6.      That in January, 2023, in a lame duck session of the General Assembly, using a shell bill introduced as a bill dealing with Insurance Code examiners, in order to evade through political games the requirements of the Illinois Constitution to pass a bill into law, amended a bill into a wide ranging firearm and magazine ban.

7.      At all times relevant Plaintiff has a right, under the Second and Fourteenth Amendments to the Constitution of the United States, to keep and bear arms, including arms for self defense in both the home, and outside of the home.

8.   That the right to keep and bear arms includes modern firearm and modern devices.

9.   Included in the ban is a ban on the transportation, outside of the home, except in very limited circumstances, as listed below:

(1) on private property owned or immediately controlled by the person;

(2) on private property that is not open to the public with the express permission of the person who owns or immediately controls such property;

(3) while on the premises of a licensed firearms dealer or gunsmith for the purpose of lawful repair;

(4) while engaged in the legal use of the assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge at a properly licensed firing range or sport shooting competition venue; or

(5) while traveling to or from these locations, provided that the assault weapon, assault weapon attachment, or .50 caliber rifle is unloaded and the assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge is enclosed in a case, firearm carrying box, shipping box, or other container.

10. That under the Second Amendment to the U.S. Constitution, as incorporated by the 14th Amendment, and per the Supreme Court ruling in New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. ___ (2022), as the Second Amendment's plain text covers an individual's conduct [here the right to bear arms outside of their home generally], the Constitution presumptively protects that conduct.

11. The government cannot justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation, as it is not.  In fact, this prohibition is unprecedented in Illinois, and inconsistent with the nations tradition of firearm regulation..

12. That while the state may prohibit the carriage of arms in certain narrow sensitive places, the challenged prohibition flips this on its head, not merely prohibiting carriage in certain sensitive places (which is already prohibited by other law), but totally prohibiting the

carriage of these arms, such to only minimally listed areas, and even those are limited to

basically wealthy landowners, as almost no firing ranges in Illinois require a license, and

under the statute land that is open to the public for such use prohibits such use and

possession.

13. That the prohibition on the transport and carriage of regulated items under the challenged

statute is, in fact, unconstitutional and void.

WHEREFORE, this Court should declare all carriage, transport and use prohibitions

contained in the statute unconstitutional under the Second and 14th Amendment, and

enjoining the enforcement of same, plus such other, further and different relief as allowed by

law, plus costs and attorney fees under 42 U.S.C. 1988.

## COUNT III

1 – 5    Plaintiffs adopt paragraphs 1 through 5 above.

6.        That in January, 2023, in a lame duck session of the General Assembly, using a shell bill

introduced as a bill dealing with Insurance Code examiners, in order to evade through political

games the requirements of the Illinois Constitution to pass a bill into law, amended a bill into a

wide ranging firearm and magazine ban.

7.        At all times relevant Plaintiff has a right, under the Second and Fourteenth Amendments

to the Constitution of the United States, to keep and bear arms, including arms for self defense in

both the home, and outside of the home.

8.    That the right to keep and bear arms includes modern firearm and modern devices.

9.    That the challenged statute purports to ban the possession or use of ammunition feeding

devices, including magazines, for long guns over 10 rounds, and for handguns over 15

rounds.

10. Since at least 1780, rifles have actually existed which included a magazine capacity of well in excess of 15 shots.  Such rifles include the Austrian Girardoni rifle, which was used by Meriwether Lewis in his famous expedition to and through the West.

11. In about 1860, the predecessor of Winchester arms, produced its Henry rifle, which, in .44 Henry held 15 rounds in its magazine, plus 1 round in the chamber.

12. Over the next hundred years, firearm magazines capacities standardized to between 13 and 20 rounds for pistols, with about 17 being average, and 15 to 35 rounds for rifles, which is standard in 2023, across most states in the United States, and most countries in the world.

13. Rifles with magazine capacities of 10 rounds or less are widely considered in 2023, to be "curios and relics", historical firearm, obsolete, or otherwise technologically dated, at best, and obsolete, at worst.

14. For instance, the U.S. M1 Carbine, which has been one of the most popular firearms, both in the United States, and internationally, with civilian, military and police users, has, since 1941, had a standard 15 round magazine capacity, and since about 1944, a standard 30 round capacity.

15. The Browning Hi Power pistol, designed by Famous American Gun Designer John Browning, and Belgian engineer Dieudonné Saive, and placed in production in 1935, had a standard capacity of 13 rounds of 9mm ammunition, and was for more than 50 years, considered the standard 9mm pistol in the world, until replaced, starting in about 1980 by most users worldwide, with Glock style 17 pistols, with 17 round standard magazines.

16. The U.S Military M17 pistol uses a standard 17 round or 21 round magazine, depending on configuration.

17. The Colt SP1, often mis-called the AR15, was first released by Cold in 1964, with standard 20 round magazines, by about the 1970s, 30 round magazines had become standard.

18. Since 1964, excluding fully automatic versions sold to various government entities, semi-automatic rifles of the SP1 or AR15 type, by various manufacturers, have become the current American standard rifle, with literally more than 10 million sold domestically, most of them since 1994, which use standard 30 round magazines.

19. Of firearms designed and sold for self defense, those with magazine capacities of 10 rounds or less are rare and unusual, and those pistols with 15 or fewer rounds are usually compact versions of normal firearms, or historical and obsolete.

20. That in January 2023, the State of Illinois enacted a purported prohibition of the manufacture, sale, transfer or possession of ammunition feeding devices that can feed more than 10 rounds of ammunition for a rifle or shotgun, or 15 rounds for a pistol, a copy of said purported statute is attached hereto as Exhibit A

21. That this action is brought pursuant to 42 USC 1983.

14. That under the Second Amendment to the U.S. Constitution, as incorporated by the 14th Amendment, and per the Supreme Court ruling in New York State Rifle & Pistol Association, Inc. v. Bruen, 597 U.S. ___ (2022), as the Second Amendment's plain text covers an individual's conduct [here the right to acquire and possess modern arms) the Constitution presumptively protects that conduct.

15. The government cannot justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation, as it is not.  In fact, this kind of prohibition is inconsistent with the nations tradition of firearm regulation..

WHEREFORE, this Court should declare prohibitions on magazine capacity contained in the statute unconstitutional under the Second and 14th Amendment, and enjoining the enforcement of same, plus such other, further and different relief as allowed by law, plus costs and attorney fees under 42 U.S.C. 1988.

## COUNT IV

1 – 5    Plaintiffs adopt paragraphs 1 through 5 above.

6.        That in January, 2023, in a lame duck session of the General Assembly, using a shell bill introduced as a bill dealing with Insurance Code examiners, in order to evade through political games the requirements of the Illinois Constitution to pass a bill into law, amended a bill into a wide ranging firearm and magazine ban.

7.        At all times relevant Plaintiff has a right, under the due process clauses of the Constitution of the United States, to reasonable notice as to what the laws actually are, and how to comply.

8.        That the challenged statute purports to ban the possession or use of ammunition feeding devices, including magazines, for long guns over 10 rounds, and for handguns over 15 rounds.

11. Since at least 1780, rifles have actually existed which included a magazine capacity of well in excess of 15 shots.  Such rifles include the Austrian Girardoni rifle, which was used by Meriwether Lewis in his famous expedition to and through the West.

12. In about 1860, the predecessor of Winchester arms, produced its Henry rifle, which, in .44 Henry held 15 rounds in its magazine, plus 1 round in the chamber.

13. Over the next hundred years, firearm magazines capacities standardized to between 13 and 20 rounds for pistols, with about 17 being average, and 15 to 35 rounds for rifles,

which is standard in 2023, across most states in the United States, and most countries in the world.

14. Rifles with magazine capacities of 10 rounds or less are widely considered in 2023, to be "curios and relics", historical firearm, obsolete, or otherwise technologically dated, at best, and obsolete, at worst.

15. For instance, the U.S. M1 Carbine, which has been one of the most popular firearms, both in the United States, and internationally, with civilian, military and police users, has, since 1941, had a standard 15 round magazine capacity, and since about 1944, a standard 30 round capacity.

16. The Browning Hi Power pistol, designed by Famous American Gun Designer John Browning, and Belgian engineer Dieudonné Saive, and placed in production in 1935, had a standard capacity of 13 rounds of 9mm ammunition, and was for more than 50 years, considered the standard 9mm pistol in the world, until replaced, starting in about 1980 by most users worldwide, with Glock style 17 pistols, with 17 round standard magazines.

17. The U.S Military M17 pistol uses a standard 17 round or 21 round magazine, depending on configuration.

18. The Colt SP1, often mis-called the AR15, was first released by Cold in 1964, with standard 20 round magazines, by about the 1970s, 30 round magazines had become standard.

19. Since 1964, excluding fully automatic versions sold to various government entities, semi-automatic rifles of the SP1 or AR15 type, by various manufacturers, have become the current American standard rifle, with literally more than 10 million sold domestically, most of them since 1994, which use standard 30 round magazines.

20. Of firearms designed and sold for self defense, those with magazine capacities of 10 rounds or less are rare and unusual, and those pistols with 15 or fewer rounds are usually compact versions of normal firearms, or historical and obsolete.

21.  That in January 2023, the State of Illinois enacted a purported prohibition of the manufacture, sale, transfer or possession of ammunition feeding devices that can feed more than 10 rounds of ammunition for a rifle or shotgun, or 15 rounds for a pistol, a copy of said purported statute is attached hereto as Exhibit A

22. That this action is brought pursuant to 42 USC 1983.

16. That that as a practical matter, there is no difference between a rifle or handgun magazine, such that it is objectively impossible to tell, from merely looking at a given device whether it is a legal 15 round handgun magazine, or a prohibited 15 round rifle magazine.

17. That many rifles use magazines commonly used by handguns, and vice versa.

18. In addition, the ammunition capacity of a given magazine may well, and often is different, depending on the ammunition loaded into it.  For instance, standard 9mm Luger ammunition, which has been manufactured worldwide since 1908, actually is manufactured to a wide variety of specifications, such that with some magazines, one more or fewer rounds might fit in a given magazine.

19. Likewise, with tubular magazine rifles and shotguns, the magazine capacity can and will vary widely, based on the type of ammunition used, such as with 38 special and .357 magnum ammunition, or 3 inch, 2.75 inch, or so called mini 12 gauge rounds.

20. Likewise, most 15 round .40 pistol type magazines will hold and function with more than 15 9mm rounds, STANAG rifle magazines will function with different number of rounds depending on the caliber of ammunition loaded.

21. Such that it is objectively impossible to determine a given ammunition capacity, without knowing what ammunition will be fed into it.

22. As such, no objectively intelligent person can determine whether a given ammunition magazine is legal, simply be looking at it, and likely even with expert advice.

23. Accordingly, the magazine ban is unconstitutionally vague.

WHEREFORE, this Court should declare prohibitions on magazine capacity contained in the statute unconstitutional under due process, and enjoining the enforcement of same, plus such other, further and different relief as allowed by law, plus costs and attorney fees under 42 U.S.C. 1988.

## COUNT V

1 – 6    Plaintiffs adopts paragraph 1 through 6 above.

7.    That the challenged law purports to ban possession, manufacture and transfer, to and by ordinary law abiding citizens, of the following, mostly, but not exclusively semi-automatic firearms:

A:    A semiautomatic rifle that has the capacity to accept a detachable magazine or that may be readily modified to accept a detachable magazine, if the firearm has one or more of the following:

(i) a pistol grip or thumbhole stock;

(ii) any feature capable of functioning as a

protruding grip that can be held by the non-trigger

hand;

(iii) a folding, telescoping, thumbhole, or

detachable stock, or a stock that is otherwise

foldable or adjustable in a manner that operates to

reduce the length, size, or any other dimension, or

otherwise enhances the concealability of, the weapon;

(iv) a flash suppressor;

(v) a grenade launcher;

(vi) a shroud attached to the barrel or that

partially or completely encircles the barrel, allowing

the bearer to hold the firearm with the non-trigger

hand without being burned, but excluding a slide that

encloses the barrel.

(B)     A semiautomatic rifle that has a fixed magazine

with the capacity to accept more than 10 rounds, except

for an attached tubular device designed to accept, and

capable of operating only with, .22 caliber rimfire

ammunition.

(C)     A semiautomatic pistol that has the capacity to

accept a detachable magazine or that may be readily

modified to accept a detachable magazine, if the firearm

has one or more of the following:

(i) a threaded barrel;

(ii) a second pistol grip or another feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(iii) a shroud attached to the barrel or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel;

(iv) a flash suppressor;

(v) the capacity to accept a detachable magazine at some location outside of the pistol grip; or

(vi) a buffer tube, arm brace, or other part that protrudes horizontally behind the pistol grip and is designed or redesigned to allow or facilitate a firearm to be fired from the shoulder.

(D) A semiautomatic pistol that has a fixed magazine with the capacity to accept more than 15 rounds.

(E)    Any shotgun with a revolving cylinder.

(F)    A semiautomatic shotgun that has one or more of the following:

(i)    a pistol grip or thumbhole stock;

(ii)    any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

   (iii)    a folding or thumbhole stock;

   (iv)    a grenade launcher;

   (v)     a fixed magazine with the capacity of more than 5 rounds; or

   (vi)    the capacity to accept a detachable magazine.

(G)    Any semiautomatic firearm that has the capacity to accept a belt ammunition

         feeding device.


8.    That in 2022, the U.S. Supreme Court in ***Bruen*** made clear that

"In the years since, the Courts of Appeals have coalesced around a "two-step" framework

for analyzing Second Amendment challenges that combines history with means-end

scrutiny. *Today*, we decline to adopt that two-part approach. . . .  Despite the popularity

of this two-step approach, it is one step too many. Step one of the predominant

framework is broadly consistent with Heller, which demands a test rooted in the Second

Amendment's text, as informed by history. But Heller and McDonald do not support

applying means-end scrutiny in the Second Amendment context. Instead, the government

must affirmatively prove that its firearms regulation is part of the historical tradition that

delimits the outer bounds of the right to keep and bear arms.

9.    That applying the narrow, well defined historical tradition of this nation, the firearms ban

at issue simply cannot stand, as all challenged firearms are of the type and kind traditionally

owned for lawful purposes. See Staples v. United States, 511 U.S. 600 (1994) ("guns (like the

semi automatic AR15 at issue in that case) falling outside those categories (referring to

machineguns and grenades) traditionally have been widely accepted as lawful possessions")

10.     That revolving cylinder shotguns, like the Colt Model 1855 Revolving Shotgun, and the more recent Ross revolving shotguns, have also long been traditionally legal items in the United States.

11.     As these banned firearms are traditionally lawful items, under the Second Amendment they may not be banned.

WHEREFORE, this Court should declare prohibitions on manufacture, transfer and possession of the firearms contained in the statute unconstitutional under the Second and Fourteenth Amendments, and enjoining the enforcement of same by Defendants, plus such other, further and different relief as allowed by law, plus costs and attorney fees under 42 U.S.C. 1988.

## COUNT IV

1 – 6   Plaintiffs adopts paragraph 1 through 6 above.

7.     That the challenged law purports to ban possession, manufacture and transfer, to and by ordinary law abiding citizens, of the following, mostly, but not exclusively semi-automatic rifles, pistols and shotguns (but apparently not receivers), by make and model, along with "copies, duplicates, variants, or altered facsimiles with the capability of any such weapon"

8.     That, as noted in Springfield Armory, Inc. *v.* City of Columbus, 29 F.3d 250 (6th Cir. 1994), such a ban is unconstitutionally vague, as nothing in the ordinance provides sufficient information to enable a person of average intelligence to determine whether a weapon they wish to purchase has a design history of the sort which would bring it within this ordinance's coverage.

9.     That this action is brought under 42 U.S.C. 1983.

WHEREFORE, this Court should declare prohibitions on manufacture, transfer and possession of the firearms contained in Sections J, K and L of the statute unconstitutional, as facially unconstitutionally vague, under due process of the U.S. Constitution, and enjoining the enforcement of same by Defendants, plus such other, further and different relief as allowed by law, plus costs and attorney fees under 42 U.S.C. 1988.

Dated:  1-13-2023                                    Respectfully Submitted,

                                                    By:sThomas G. Maag

                                                    Thomas G. Maag #6272640
                                                    Maag Law Firm, LLC
                                                    22 West Lorena Avenue
                                                    Wood River, IL  62095
                                                    618-216-5291
                                                    tmaag@maaglaw.com

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

AN ACT concerning regulation.

**Be  it  enacted  by  the  People  of  the  State  of  Illinois,
represented  in  the  General  Assembly:**

Section 1. This Act may be referred to as the Protect
Illinois Communities Act.

Section 3. The Illinois Administrative Procedure Act is
amended by adding Section 5-45.35 as follows:

(5 ILCS 100/5-45.35 new)
Sec. 5-45.35. Emergency rulemaking. To provide for the
expeditious and timely implementation of this amendatory Act
of the 102nd General Assembly, emergency rules implementing
this amendatory Act of the 102nd General Assembly may be
adopted in accordance with Section 5-45 by the Illinois State
Police. The adoption of emergency rules authorized by Section
5-45 and this Section is deemed to be necessary for the public
interest, safety, and welfare.
This Section is repealed one year after the effective date
of this amendatory Act of the 102nd General Assembly.

Section 4. The Freedom of Information Act is amended by
changing Section 7.5 as follows:

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

(5 ILCS 140/7.5)

Sec. 7.5. Statutory exemptions. To the extent provided for by the statutes referenced below, the following shall be exempt from inspection and copying:

(a) All information determined to be confidential under Section 4002 of the Technology Advancement and Development Act.

(b) Library circulation and order records identifying library users with specific materials under the Library Records Confidentiality Act.

(c) Applications, related documents, and medical records received by the Experimental Organ Transplantation Procedures Board and any and all documents or other records prepared by the Experimental Organ Transplantation Procedures Board or its staff relating to applications it has received.

(d) Information and records held by the Department of Public Health and its authorized representatives relating to known or suspected cases of sexually transmissible disease or any information the disclosure of which is restricted under the Illinois Sexually Transmissible Disease Control Act.

(e) Information the disclosure of which is exempted under Section 30 of the Radon Industry Licensing Act.

(f) Firm performance evaluations under Section 55 of the Architectural, Engineering, and Land Surveying

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

Qualifications Based Selection Act.

(g) Information the disclosure of which is restricted and exempted under Section 50 of the Illinois Prepaid Tuition Act.

(h) Information the disclosure of which is exempted under the State Officials and Employees Ethics Act, and records of any lawfully created State or local inspector general's office that would be exempt if created or obtained by an Executive Inspector General's office under that Act.

(i) Information contained in a local emergency energy plan submitted to a municipality in accordance with a local emergency energy plan ordinance that is adopted under Section 11-21.5-5 of the Illinois Municipal Code.

(j) Information and data concerning the distribution of surcharge moneys collected and remitted by carriers under the Emergency Telephone System Act.

(k) Law enforcement officer identification information or driver identification information compiled by a law enforcement agency or the Department of Transportation under Section 11-212 of the Illinois Vehicle Code.

(l) Records and information provided to a residential health care facility resident sexual assault and death review team or the Executive Council under the Abuse Prevention Review Team Act.

(m) Information provided to the predatory lending

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

database created pursuant to Article 3 of the Residential
Real Property Disclosure Act, except to the extent
authorized under that Article.

(n) Defense budgets and petitions for certification of
compensation and expenses for court appointed trial
counsel as provided under Sections 10 and 15 of the
Capital Crimes Litigation Act. This subsection (n) shall
apply until the conclusion of the trial of the case, even
if the prosecution chooses not to pursue the death penalty
prior to trial or sentencing.

(o) Information that is prohibited from being
disclosed under Section 4 of the Illinois Health and
Hazardous Substances Registry Act.

(p) Security portions of system safety program plans,
investigation reports, surveys, schedules, lists, data, or
information compiled, collected, or prepared by or for the
Department of Transportation under Sections 2705-300 and
2705-616 of the Department of Transportation Law of the
Civil Administrative Code of Illinois, the Regional
Transportation Authority under Section 2.11 of the
Regional Transportation Authority Act, or the St. Clair
County Transit District under the Bi-State Transit Safety
Act.

(q) Information prohibited from being disclosed by the
Personnel Record Review Act.

(r) Information prohibited from being disclosed by the

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

Illinois School Student Records Act.

(s) Information the disclosure of which is restricted under Section 5-108 of the Public Utilities Act.

(t) All identified or deidentified health information in the form of health data or medical records contained in, stored in, submitted to, transferred by, or released from the Illinois Health Information Exchange, and identified or deidentified health information in the form of health data and medical records of the Illinois Health Information Exchange in the possession of the Illinois Health Information Exchange Office due to its administration of the Illinois Health Information Exchange. The terms "identified" and "deidentified" shall be given the same meaning as in the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191, or any subsequent amendments thereto, and any regulations promulgated thereunder.

(u) Records and information provided to an independent team of experts under the Developmental Disability and Mental Health Safety Act (also known as Brian's Law).

(v) Names and information of people who have applied for or received Firearm Owner's Identification Cards under the Firearm Owners Identification Card Act or applied for or received a concealed carry license under the Firearm Concealed Carry Act, unless otherwise authorized by the Firearm Concealed Carry Act; and databases under the

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

Firearm Concealed Carry Act, records of the Concealed Carry Licensing Review Board under the Firearm Concealed Carry Act, and law enforcement agency objections under the Firearm Concealed Carry Act.

(v-5) Records of the Firearm Owner's Identification Card Review Board that are exempted from disclosure under Section 10 of the Firearm Owners Identification Card Act.

(w) Personally identifiable information which is exempted from disclosure under subsection (g) of Section 19.1 of the Toll Highway Act.

(x) Information which is exempted from disclosure under Section 5-1014.3 of the Counties Code or Section 8-11-21 of the Illinois Municipal Code.

(y) Confidential information under the Adult Protective Services Act and its predecessor enabling statute, the Elder Abuse and Neglect Act, including information about the identity and administrative finding against any caregiver of a verified and substantiated decision of abuse, neglect, or financial exploitation of an eligible adult maintained in the Registry established under Section 7.5 of the Adult Protective Services Act.

(z) Records and information provided to a fatality review team or the Illinois Fatality Review Team Advisory Council under Section 15 of the Adult Protective Services Act.

(aa) Information which is exempted from disclosure

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

under Section 2.37 of the Wildlife Code.

(bb) Information which is or was prohibited from disclosure by the Juvenile Court Act of 1987.

(cc) Recordings made under the Law Enforcement Officer-Worn Body Camera Act, except to the extent authorized under that Act.

(dd) Information that is prohibited from being disclosed under Section 45 of the Condominium and Common Interest Community Ombudsperson Act.

(ee) Information that is exempted from disclosure under Section 30.1 of the Pharmacy Practice Act.

(ff) Information that is exempted from disclosure under the Revised Uniform Unclaimed Property Act.

(gg) Information that is prohibited from being disclosed under Section 7-603.5 of the Illinois Vehicle Code.

(hh) Records that are exempt from disclosure under Section 1A-16.7 of the Election Code.

(ii) Information which is exempted from disclosure under Section 2505-800 of the Department of Revenue Law of the Civil Administrative Code of Illinois.

(jj) Information and reports that are required to be submitted to the Department of Labor by registering day and temporary labor service agencies but are exempt from disclosure under subsection (a-1) of Section 45 of the Day and Temporary Labor Services Act.

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

(kk) Information prohibited from disclosure under the Seizure and Forfeiture Reporting Act.

(ll) Information the disclosure of which is restricted and exempted under Section 5-30.8 of the Illinois Public Aid Code.

(mm) Records that are exempt from disclosure under Section 4.2 of the Crime Victims Compensation Act.

(nn) Information that is exempt from disclosure under Section 70 of the Higher Education Student Assistance Act.

(oo) Communications, notes, records, and reports arising out of a peer support counseling session prohibited from disclosure under the First Responders Suicide Prevention Act.

(pp) Names and all identifying information relating to an employee of an emergency services provider or law enforcement agency under the First Responders Suicide Prevention Act.

(qq) Information and records held by the Department of Public Health and its authorized representatives collected under the Reproductive Health Act.

(rr) Information that is exempt from disclosure under the Cannabis Regulation and Tax Act.

(ss) Data reported by an employer to the Department of Human Rights pursuant to Section 2-108 of the Illinois Human Rights Act.

(tt) Recordings made under the Children's Advocacy

Public Act 102-1116

HB5471 Enrolled                        LRB102 24372 BMS 33606 b

Center Act, except to the extent authorized under that Act.

(uu) Information that is exempt from disclosure under Section 50 of the Sexual Assault Evidence Submission Act.

(vv) Information that is exempt from disclosure under subsections (f) and (j) of Section 5-36 of the Illinois Public Aid Code.

(ww) Information that is exempt from disclosure under Section 16.8 of the State Treasurer Act.

(xx) Information that is exempt from disclosure or information that shall not be made public under the Illinois Insurance Code.

(yy) Information prohibited from being disclosed under the Illinois Educational Labor Relations Act.

(zz) Information prohibited from being disclosed under the Illinois Public Labor Relations Act.

(aaa) Information prohibited from being disclosed under Section 1-167 of the Illinois Pension Code.

(bbb) Information that is prohibited from disclosure by the Illinois Police Training Act and the Illinois State Police Act.

(ccc) Records exempt from disclosure under Section 2605-304 of the Illinois State Police Law of the Civil Administrative Code of Illinois.

(ddd) Information prohibited from being disclosed under Section 35 of the Address Confidentiality for

Public Act 102-1116

HB5471 Enrolled                                LRB102 24372 BMS 33606 b

Victims of Domestic Violence, Sexual Assault, Human Trafficking, or Stalking Act.

(eee) Information prohibited from being disclosed under subsection (b) of Section 75 of the Domestic Violence Fatality Review Act.

(fff) Images from cameras under the Expressway Camera Act. This subsection (fff) is inoperative on and after July 1, 2023.

(ggg) ~~(fff)~~ Information prohibited from disclosure under paragraph (3) of subsection (a) of Section 14 of the Nurse Agency Licensing Act.

(hhh) Information submitted to the Department of State Police in an affidavit or application for an assault weapon endorsement, assault weapon attachment endorsement, .50 caliber rifle endorsement, or .50 caliber cartridge endorsement under the Firearm Owners Identification Card Act.

(Source: P.A. 101-13, eff. 6-12-19; 101-27, eff. 6-25-19; 101-81, eff. 7-12-19; 101-221, eff. 1-1-20; 101-236, eff. 1-1-20; 101-375, eff. 8-16-19; 101-377, eff. 8-16-19; 101-452, eff. 1-1-20; 101-466, eff. 1-1-20; 101-600, eff. 12-6-19; 101-620, eff 12-20-19; 101-649, eff. 7-7-20; 101-652, eff. 1-1-22; 101-656, eff. 3-23-21; 102-36, eff. 6-25-21; 102-237, eff. 1-1-22; 102-292, eff. 1-1-22; 102-520, eff. 8-20-21; 102-559, eff. 8-20-21; 102-813, eff. 5-13-22; 102-946, eff. 7-1-22; 102-1042, eff. 6-3-22; revised 8-1-22.)

Public Act 102-1116

HB5471 Enrolled                                    LRB102 24372 BMS 33606 b


    Section 5. The Illinois State Police Law of the Civil Administrative Code of Illinois is amended by changing Sections 2605-35 and 2605-51.1 as follows:


    (20 ILCS 2605/2605-35) (was 20 ILCS 2605/55a-3)
    Sec. 2605-35. Division of Criminal Investigation.
    (a) The Division of Criminal Investigation shall exercise the following functions and those in Section 2605-30:
    (1) Exercise the rights, powers, and duties vested by law in the Illinois State Police by the Illinois Horse Racing Act of 1975, including those set forth in Section 2605-215.
    (2) Investigate the origins, activities, personnel, and incidents of crime and enforce the criminal laws of this State related thereto.
    (3) Enforce all laws regulating the production, sale, prescribing, manufacturing, administering, transporting, having in possession, dispensing, delivering, distributing, or use of controlled substances and cannabis.
    (4) Cooperate with the police of cities, villages, and incorporated towns and with the police officers of any county in enforcing the laws of the State and in making arrests and recovering property.
    (5) Apprehend and deliver up any person charged in

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

this State or any other state with treason or a felony or
other crime who has fled from justice and is found in this
State.

(6) Investigate recipients and providers under the
Illinois Public Aid Code and any personnel involved in the
administration of the Code who are suspected of any
violation of the Code pertaining to fraud in the
administration, receipt, or provision of assistance and
pertaining to any violation of criminal law; and exercise
the functions required under Section 2605-220 in the
conduct of those investigations.

(7) Conduct other investigations as provided by law,
including, but not limited to, investigations of human
trafficking, illegal drug trafficking, and illegal
firearms trafficking.

(8) Investigate public corruption.

(9) Exercise other duties that may be assigned by the
Director in order to fulfill the responsibilities and
achieve the purposes of the Illinois State Police, which
may include the coordination of gang, terrorist, and
organized crime prevention, control activities, and
assisting local law enforcement in their crime control
activities.

(10) Conduct investigations (and cooperate with
federal law enforcement agencies in the investigation) of
any property-related crimes, such as money laundering,

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

involving individuals or entities listed on the sanctions list maintained by the U.S. Department of Treasury's Office of Foreign Asset Control.

(b) (Blank).

(c) The Division of Criminal Investigation shall provide statewide coordination and strategy pertaining to firearm-related intelligence, firearms trafficking interdiction, and investigations reaching across all divisions of the Illinois State Police, including providing crime gun intelligence support for suspects and firearms involved in firearms trafficking or the commission of a crime involving firearms that is investigated by the Illinois State Police and other federal, State, and local law enforcement agencies, with the objective of reducing and preventing illegal possession and use of firearms, firearms trafficking, firearm-related homicides, and other firearm-related violent crimes in Illinois.

(Source: P.A. 102-538, eff. 8-20-21; 102-813, eff. 5-13-22; 102-1108, eff. 12-21-22.)


(20 ILCS 2605/2605-51.1)

(Section scheduled to be repealed on June 1, 2026)

Sec. 2605-51.1. Commission on Implementing the Firearms Restraining Order Act.

(a) There is created the Commission on Implementing the Firearms Restraining Order Act composed of at least 12 members

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

to advise on the strategies of education and implementation of
the Firearms Restraining Order Act. The Commission shall be
appointed by the Director of the Illinois State Police or his
or her designee and shall include a liaison or representative
nominated from the following:

    (1) the Office of the Attorney General, appointed by
the Attorney General;

    (2) the Director of the Illinois State Police or his
or her designee;

    (3) at least 3 State's Attorneys, nominated by the
Director of the Office of the State's Attorneys Appellate
Prosecutor;

    (4) at least 2 municipal police department
representatives, nominated by the Illinois Association of
Chiefs of Police;

    (5) an Illinois sheriff, nominated by the Illinois
Sheriffs' Association;

    (6) the Director of Public Health or his or her
designee;

    (7) the Illinois Law Enforcement Training Standards
Board, nominated by the Executive Director of the Board;

    (8) a representative from a public defender's office,
nominated by the State Appellate Defender;

    (9) a circuit court judge, nominated by the Chief
Justice of the Supreme Court;

    (10) a prosecutor with experience managing or

Public Act 102-1116

HB5471 Enrolled                                    LRB102 24372 BMS 33606 b

directing a program in another state where the
implementation of that state's extreme risk protection
order law has achieved high rates of petition filings
nominated by the National District Attorneys Association;
~~and~~

(11) an expert from law enforcement who has experience
managing or directing a program in another state where the
implementation of that state's extreme risk protection
order law has achieved high rates of petition filings
nominated by the Director of the Illinois State Police;
and

(12) a circuit court clerk, nominated by the President
of the Illinois Association of Court Clerks.

(b) The Commission shall be chaired by the Director of the
Illinois State Police or his or her designee. The Commission
shall meet, either virtually or in person, to discuss the
implementation of the Firearms Restraining Order Act as
determined by the Commission while the strategies are being
established.

(c) The members of the Commission shall serve without
compensation and shall serve 3-year terms.

(d) An annual report shall be submitted to the General
Assembly by the Commission that may include summary
information about firearms restraining order use by county,
challenges to Firearms Restraining Order Act implementation,
and recommendations for increasing and improving

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

implementation.

(e) The Commission shall develop a model policy with an overall framework for the timely relinquishment of firearms whenever a firearms restraining order is issued. The model policy shall be finalized within the first 4 months of convening. In formulating the model policy, the Commission shall consult counties in Illinois and other states with extreme risk protection order laws which have achieved a high rate of petition filings. Once approved, the Illinois State Police shall work with their local law enforcement agencies within their county to design a comprehensive strategy for the timely relinquishment of firearms, using the model policy as an overall framework. Each individual agency may make small modifications as needed to the model policy and must approve and adopt a policy that aligns with the model policy. The Illinois State Police shall convene local police chiefs and sheriffs within their county as needed to discuss the relinquishment of firearms.

(f) The Commission shall be dissolved June 1, 2025 (3 years after the effective date of Public Act 102-345).

(g) This Section is repealed June 1, 2026 (4 years after the effective date of Public Act 102-345).

(Source: P.A. 102-345, eff. 6-1-22; 102-813, eff. 5-13-22.)


Section 7. The Illinois Procurement Code is amended by changing Section 1-10 as follows:

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b


(30 ILCS 500/1-10)

Sec. 1-10. Application.

(a)  This  Code  applies  only  to  procurements  for  which
bidders,  offerors,  potential  contractors,  or  contractors  were
first  solicited  on  or  after  July 1, 1998.  This  Code  shall  not
be  construed  to  affect  or  impair  any  contract,  or  any
provision  of  a  contract,  entered  into  based  on  a  solicitation
prior  to  the  implementation  date  of  this  Code  as  described  in
Article  99,  including,  but  not  limited  to,  any  covenant
entered  into  with  respect  to  any  revenue  bonds  or  similar
instruments.  All  procurements  for  which  contracts  are
solicited  between  the  effective  date  of  Articles 50 and 99 and
July 1, 1998  shall  be  substantially  in  accordance  with  this
Code  and  its  intent.

(b)  This  Code  shall  apply  regardless  of  the  source  of  the
funds  with  which  the  contracts  are  paid,  including  federal
assistance  moneys.  This  Code  shall  not  apply  to:

(1)  Contracts  between  the  State  and  its  political
subdivisions  or  other  governments,  or  between  State
governmental  bodies,  except  as  specifically  provided  in
this  Code.

(2)  Grants,  except  for  the  filing  requirements  of
Section 20-80.

(3)  Purchase  of  care,  except  as  provided  in  Section
5-30.6  of  the  Illinois  Public  Aid  Code  and  this  Section.

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

    (4) Hiring of an individual as an employee and not as
an independent contractor, whether pursuant to an
employment code or policy or by contract directly with
that individual.

    (5) Collective bargaining contracts.

    (6) Purchase of real estate, except that notice of
this type of contract with a value of more than $25,000
must be published in the Procurement Bulletin within 10
calendar days after the deed is recorded in the county of
jurisdiction. The notice shall identify the real estate
purchased, the names of all parties to the contract, the
value of the contract, and the effective date of the
contract.

    (7) Contracts necessary to prepare for anticipated
litigation, enforcement actions, or investigations,
provided that the chief legal counsel to the Governor
shall give his or her prior approval when the procuring
agency is one subject to the jurisdiction of the Governor,
and provided that the chief legal counsel of any other
procuring entity subject to this Code shall give his or
her prior approval when the procuring entity is not one
subject to the jurisdiction of the Governor.

    (8) (Blank).

    (9) Procurement expenditures by the Illinois
Conservation Foundation when only private funds are used.

    (10) (Blank).

Public Act 102-1116

HB5471 Enrolled                        LRB102 24372 BMS 33606 b

    (11) Public-private agreements entered into according to the procurement requirements of Section 20 of the Public-Private Partnerships for Transportation Act and design-build agreements entered into according to the procurement requirements of Section 25 of the Public-Private Partnerships for Transportation Act.

    (12) (A) Contracts for legal, financial, and other professional and artistic services entered into by the Illinois Finance Authority in which the State of Illinois is not obligated. Such contracts shall be awarded through a competitive process authorized by the members of the Illinois Finance Authority and are subject to Sections 5-30, 20-160, 50-13, 50-20, 50-35, and 50-37 of this Code, as well as the final approval by the members of the Illinois Finance Authority of the terms of the contract.

    (B) Contracts for legal and financial services entered into by the Illinois Housing Development Authority in connection with the issuance of bonds in which the State of Illinois is not obligated. Such contracts shall be awarded through a competitive process authorized by the members of the Illinois Housing Development Authority and are subject to Sections 5-30, 20-160, 50-13, 50-20, 50-35, and 50-37 of this Code, as well as the final approval by the members of the Illinois Housing Development Authority of the terms of the contract.

    (13) Contracts for services, commodities, and

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

equipment to support the delivery of timely forensic
science services in consultation with and subject to the
approval of the Chief Procurement Officer as provided in
subsection (d) of Section 5-4-3a of the Unified Code of
Corrections, except for the requirements of Sections
20-60, 20-65, 20-70, and 20-160 and Article 50 of this
Code; however, the Chief Procurement Officer may, in
writing with justification, waive any certification
required under Article 50 of this Code. For any contracts
for services which are currently provided by members of a
collective bargaining agreement, the applicable terms of
the collective bargaining agreement concerning
subcontracting shall be followed.

On and after January 1, 2019, this paragraph (13),
except for this sentence, is inoperative.

(14) Contracts for participation expenditures required
by a domestic or international trade show or exhibition of
an exhibitor, member, or sponsor.

(15) Contracts with a railroad or utility that
requires the State to reimburse the railroad or utilities
for the relocation of utilities for construction or other
public purpose. Contracts included within this paragraph
(15) shall include, but not be limited to, those
associated with: relocations, crossings, installations,
and maintenance. For the purposes of this paragraph (15),
"railroad" means any form of non-highway ground

Public Act 102-1116

HB5471 Enrolled                                    LRB102 24372 BMS 33606 b

transportation that runs on rails or electromagnetic guideways and "utility" means: (1) public utilities as defined in Section 3-105 of the Public Utilities Act, (2) telecommunications carriers as defined in Section 13-202 of the Public Utilities Act, (3) electric cooperatives as defined in Section 3.4 of the Electric Supplier Act, (4) telephone or telecommunications cooperatives as defined in Section 13-212 of the Public Utilities Act, (5) rural water or waste water systems with 10,000 connections or less, (6) a holder as defined in Section 21-201 of the Public Utilities Act, and (7) municipalities owning or operating utility systems consisting of public utilities as that term is defined in Section 11-117-2 of the Illinois Municipal Code.

(16) Procurement expenditures necessary for the Department of Public Health to provide the delivery of timely newborn screening services in accordance with the Newborn Metabolic Screening Act.

(17) Procurement expenditures necessary for the Department of Agriculture, the Department of Financial and Professional Regulation, the Department of Human Services, and the Department of Public Health to implement the Compassionate Use of Medical Cannabis Program and Opioid Alternative Pilot Program requirements and ensure access to medical cannabis for patients with debilitating medical conditions in accordance with the Compassionate Use of

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

Medical Cannabis Program Act.

    (18) This Code does not apply to any procurements
necessary for the Department of Agriculture, the
Department of Financial and Professional Regulation, the
Department of Human Services, the Department of Commerce
and Economic Opportunity, and the Department of Public
Health to implement the Cannabis Regulation and Tax Act if
the applicable agency has made a good faith determination
that it is necessary and appropriate for the expenditure
to fall within this exemption and if the process is
conducted in a manner substantially in accordance with the
requirements of Sections 20-160, 25-60, 30-22, 50-5,
50-10, 50-10.5, 50-12, 50-13, 50-15, 50-20, 50-21, 50-35,
50-36, 50-37, 50-38, and 50-50 of this Code; however, for
Section 50-35, compliance applies only to contracts or
subcontracts over $100,000. Notice of each contract
entered into under this paragraph (18) that is related to
the procurement of goods and services identified in
paragraph (1) through (9) of this subsection shall be
published in the Procurement Bulletin within 14 calendar
days after contract execution. The Chief Procurement
Officer shall prescribe the form and content of the
notice. Each agency shall provide the Chief Procurement
Officer, on a monthly basis, in the form and content
prescribed by the Chief Procurement Officer, a report of
contracts that are related to the procurement of goods and

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

services identified in this subsection. At a minimum, this
report shall include the name of the contractor, a
description of the supply or service provided, the total
amount of the contract, the term of the contract, and the
exception to this Code utilized. A copy of any or all of
these contracts shall be made available to the Chief
Procurement Officer immediately upon request. The Chief
Procurement Officer shall submit a report to the Governor
and General Assembly no later than November 1 of each year
that includes, at a minimum, an annual summary of the
monthly information reported to the Chief Procurement
Officer. This exemption becomes inoperative 5 years after
June 25, 2019 (the effective date of Public Act 101-27).

(19) Acquisition of modifications or adjustments,
limited to assistive technology devices and assistive
technology services, adaptive equipment, repairs, and
replacement parts to provide reasonable accommodations (i)
that enable a qualified applicant with a disability to
complete the job application process and be considered for
the position such qualified applicant desires, (ii) that
modify or adjust the work environment to enable a
qualified current employee with a disability to perform
the essential functions of the position held by that
employee, (iii) to enable a qualified current employee
with a disability to enjoy equal benefits and privileges
of employment as are enjoyed by other similarly situated

Public Act 102-1116

HB5471 Enrolled                         LRB102 24372 BMS 33606 b

employees without disabilities, and (iv) that allow a
customer, client, claimant, or member of the public
seeking State services full use and enjoyment of and
access to its programs, services, or benefits.

For purposes of this paragraph (19):

"Assistive technology devices" means any item, piece
of equipment, or product system, whether acquired
commercially off the shelf, modified, or customized, that
is used to increase, maintain, or improve functional
capabilities of individuals with disabilities.

"Assistive technology services" means any service that
directly assists an individual with a disability in
selection, acquisition, or use of an assistive technology
device.

"Qualified" has the same meaning and use as provided
under the federal Americans with Disabilities Act when
describing an individual with a disability.

(20) Procurement expenditures necessary for the
Illinois Commerce Commission to hire third-party
facilitators pursuant to Sections 16-105.17 and 16-108.18
of the Public Utilities Act or an ombudsman pursuant to
Section 16-107.5 of the Public Utilities Act, a
facilitator pursuant to Section 16-105.17 of the Public
Utilities Act, or a grid auditor pursuant to Section
16-105.10 of the Public Utilities Act.

(21) Procurement expenditures for the purchase,

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

renewal, and expansion of software, software licenses, or
software maintenance agreements that support the efforts
of the Illinois State Police to enforce, regulate, and
administer the Firearm Owners Identification Card Act, the
Firearm Concealed Carry Act, the Firearms Restraining
Order Act, the Firearm Dealer License Certification Act,
the Law Enforcement Agencies Data System (LEADS), the
Uniform Crime Reporting Act, the Criminal Identification
Act, the Uniform Conviction Information Act, and the Gun
Trafficking Information Act, or establish or maintain
record management systems necessary to conduct human
trafficking investigations or gun trafficking or other
stolen firearm investigations. This paragraph (21) applies
to contracts entered into on or after the effective date
of this amendatory Act of the 102nd General Assembly and
the renewal of contracts that are in effect on the
effective date of this amendatory Act of the 102nd General
Assembly.

Notwithstanding any other provision of law, for contracts
with an annual value of more than $100,000 entered into on or
after October 1, 2017 under an exemption provided in any
paragraph of this subsection (b), except paragraph (1), (2),
or (5), each State agency shall post to the appropriate
procurement bulletin the name of the contractor, a description
of the supply or service provided, the total amount of the
contract, the term of the contract, and the exception to the

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

Code utilized. The chief procurement officer shall submit a
report to the Governor and General Assembly no later than
November 1 of each year that shall include, at a minimum, an
annual summary of the monthly information reported to the
chief procurement officer.

(c) This Code does not apply to the electric power
procurement process provided for under Section 1-75 of the
Illinois Power Agency Act and Section 16-111.5 of the Public
Utilities Act.

(d) Except for Section 20-160 and Article 50 of this Code,
and as expressly required by Section 9.1 of the Illinois
Lottery Law, the provisions of this Code do not apply to the
procurement process provided for under Section 9.1 of the
Illinois Lottery Law.

(e) This Code does not apply to the process used by the
Capital Development Board to retain a person or entity to
assist the Capital Development Board with its duties related
to the determination of costs of a clean coal SNG brownfield
facility, as defined by Section 1-10 of the Illinois Power
Agency Act, as required in subsection (h-3) of Section 9-220
of the Public Utilities Act, including calculating the range
of capital costs, the range of operating and maintenance
costs, or the sequestration costs or monitoring the
construction of clean coal SNG brownfield facility for the
full duration of construction.

(f) (Blank).

Public Act 102-1116

HB5471 Enrolled                               LRB102 24372 BMS 33606 b

(g) (Blank).

(h) This Code does not apply to the process to procure or contracts entered into in accordance with Sections 11-5.2 and 11-5.3 of the Illinois Public Aid Code.

(i) Each chief procurement officer may access records necessary to review whether a contract, purchase, or other expenditure is or is not subject to the provisions of this Code, unless such records would be subject to attorney-client privilege.

(j) This Code does not apply to the process used by the Capital Development Board to retain an artist or work or works of art as required in Section 14 of the Capital Development Board Act.

(k) This Code does not apply to the process to procure contracts, or contracts entered into, by the State Board of Elections or the State Electoral Board for hearing officers appointed pursuant to the Election Code.

(l) This Code does not apply to the processes used by the Illinois Student Assistance Commission to procure supplies and services paid for from the private funds of the Illinois Prepaid Tuition Fund. As used in this subsection (l), "private funds" means funds derived from deposits paid into the Illinois Prepaid Tuition Trust Fund and the earnings thereon.

(m) This Code shall apply regardless of the source of funds with which contracts are paid, including federal assistance moneys. Except as specifically provided in this

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

Code, this Code shall not apply to procurement expenditures
necessary for the Department of Public Health to conduct the
Healthy Illinois Survey in accordance with Section 2310-431 of
the Department of Public Health Powers and Duties Law of the
Civil Administrative Code of Illinois.

(Source: P.A. 101-27, eff. 6-25-19; 101-81, eff. 7-12-19;
101-363, eff. 8-9-19; 102-175, eff. 7-29-21; 102-483, eff
1-1-22; 102-558, eff. 8-20-21; 102-600, eff. 8-27-21; 102-662,
eff. 9-15-21; 102-721, eff. 1-1-23; 102-813, eff. 5-13-22.)


    Section 10. The Firearm Owners Identification Card Act is
amended by changing Sections 2, 3, 4, and 8 and by adding
Section 4.1 as follows:


    (430 ILCS 65/2) (from Ch. 38, par. 83-2)

    Sec. 2. Firearm Owner's Identification Card required;
exceptions.

    (a) (1) No person may acquire or possess any firearm, stun
gun, or taser within this State without having in his or her
possession a Firearm Owner's Identification Card previously
issued in his or her name by the Illinois State Police under
the provisions of this Act.

    (2) No person may acquire or possess firearm ammunition
within this State without having in his or her possession a
Firearm Owner's Identification Card previously issued in his
or her name by the Illinois State Police under the provisions

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

of this Act.

(b)  The  provisions  of  this  Section  regarding  the
possession  of  firearms,  firearm  ammunition,  stun  guns,  and
tasers do not apply to:

(1)  United  States  Marshals,  while  engaged  in  the
operation of their official duties;

(2)  Members  of  the  Armed  Forces  of  the  United  States
or  the  National  Guard,  while  engaged  in  the  operation  of
their official duties;

(3)  Federal  officials  required  to  carry  firearms,
while engaged in the operation of their official duties;

(4)  Members  of  bona  fide  veterans  organizations  which
receive  firearms  directly  from  the  armed  forces  of  the
United  States,  while  using  the  firearms  for  ceremonial
purposes with blank ammunition;

(5)  Nonresident  hunters  during  hunting  season,  with
valid  nonresident  hunting  licenses  and  while  in  an  area
where  hunting  is  permitted;  however,  at  all  other  times
and  in  all  other  places  these  persons  must  have  their
firearms unloaded and enclosed in a case;

(6)  Those  hunters  exempt  from  obtaining  a  hunting
license  who  are  required  to  submit  their  Firearm  Owner's
Identification  Card  when  hunting  on  Department  of  Natural
Resources owned or managed sites;

(7)  Nonresidents  while  on  a  firing  or  shooting  range
recognized  by  the  Illinois  State  Police;  however,  these

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

persons must at all other times and in all other places
have their firearms unloaded and enclosed in a case;

(8) Nonresidents while at a firearm showing or display
recognized by the Illinois State Police; however, at all
other times and in all other places these persons must
have their firearms unloaded and enclosed in a case;

(9) Nonresidents whose firearms are unloaded and
enclosed in a case;

(10) Nonresidents who are currently licensed or
registered to possess a firearm in their resident state;

(11) Unemancipated minors while in the custody and
immediate control of their parent or legal guardian or
other person in loco parentis to the minor if the parent or
legal guardian or other person in loco parentis to the
minor has a currently valid Firearm Owner's Identification
Card;

(12) Color guards of bona fide veterans organizations
or members of bona fide American Legion bands while using
firearms for ceremonial purposes with blank ammunition;

(13) Nonresident hunters whose state of residence does
not require them to be licensed or registered to possess a
firearm and only during hunting season, with valid hunting
licenses, while accompanied by, and using a firearm owned
by, a person who possesses a valid Firearm Owner's
Identification Card and while in an area within a
commercial club licensed under the Wildlife Code where

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

hunting is permitted and controlled, but in no instance
upon sites owned or managed by the Department of Natural
Resources;

(14) Resident hunters who are properly authorized to
hunt and, while accompanied by a person who possesses a
valid Firearm Owner's Identification Card, hunt in an area
within a commercial club licensed under the Wildlife Code
where hunting is permitted and controlled; and

(15) A person who is otherwise eligible to obtain a
Firearm Owner's Identification Card under this Act and is
under the direct supervision of a holder of a Firearm
Owner's Identification Card who is 21 years of age or
older while the person is on a firing or shooting range or
is a participant in a firearms safety and training course
recognized by a law enforcement agency or a national,
statewide shooting sports organization; and

(16) Competitive shooting athletes whose competition
firearms are sanctioned by the International Olympic
Committee, the International Paralympic Committee, the
International Shooting Sport Federation, or USA Shooting
in connection with such athletes' training for and
participation in shooting competitions at the 2016 Olympic
and Paralympic Games and sanctioned test events leading up
to the 2016 Olympic and Paralympic Games.

(c) The provisions of this Section regarding the
acquisition and possession of firearms, firearm ammunition,

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

stun guns, and tasers do not apply to law enforcement
officials of this or any other jurisdiction, while engaged in
the operation of their official duties.

(c-5) The provisions of paragraphs (1) and (2) of
subsection (a) of this Section regarding the possession of
firearms and firearm ammunition do not apply to the holder of a
valid concealed carry license issued under the Firearm
Concealed Carry Act who is in physical possession of the
concealed carry license.

(d) Any person who becomes a resident of this State, who is
not otherwise prohibited from obtaining, possessing, or using
a firearm or firearm ammunition, shall not be required to have
a Firearm Owner's Identification Card to possess firearms or
firearms ammunition until 60 calendar days after he or she
obtains an Illinois driver's license or Illinois
Identification Card.
(Source: P.A. 102-538, eff. 8-20-21.)


(430 ILCS 65/3) (from Ch. 38, par. 83-3)

(Text of Section before amendment by P.A. 102-237)

Sec. 3. (a) Except as provided in Section 3a, no person may
knowingly transfer, or cause to be transferred, any firearm,
firearm ammunition, stun gun, or taser to any person within
this State unless the transferee with whom he deals displays
either: (1) a currently valid Firearm Owner's Identification
Card which has previously been issued in his or her name by the

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

Illinois State Police under the provisions of this Act; or (2)
a currently valid license to carry a concealed firearm which
has previously been issued in his or her name by the Illinois
State Police under the Firearm Concealed Carry Act. In
addition, all firearm, stun gun, and taser transfers by
federally licensed firearm dealers are subject to Section 3.1.

(a-5) Any person who is not a federally licensed firearm
dealer and who desires to transfer or sell a firearm while that
person is on the grounds of a gun show must, before selling or
transferring the firearm, request the Illinois State Police to
conduct a background check on the prospective recipient of the
firearm in accordance with Section 3.1.

(a-10) Notwithstanding item (2) of subsection (a) of this
Section, any person who is not a federally licensed firearm
dealer and who desires to transfer or sell a firearm or
firearms to any person who is not a federally licensed firearm
dealer shall, before selling or transferring the firearms,
contact a federal firearm license dealer under paragraph (1)
of subsection (a-15) of this Section to conduct the transfer
or the Illinois State Police with the transferee's or
purchaser's Firearm Owner's Identification Card number to
determine the validity of the transferee's or purchaser's
Firearm Owner's Identification Card under State and federal
law including the National Instant Criminal Background Check
System. This subsection shall not be effective until July 1,
2023. Until that date the transferor shall contact the

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

Illinois State Police with the transferee's or purchaser's
Firearm Owner's Identification Card number to determine the
validity of the card ~~January 1, 2014~~. The Illinois State
Police may adopt rules concerning the implementation of this
subsection. The Illinois State Police shall provide the seller
or transferor an approval number if the purchaser's Firearm
Owner's Identification Card is valid. Approvals issued by the
Illinois State Police for the purchase of a firearm pursuant
to this subsection are valid for 30 days from the date of
issue.

(a-15) The provisions of subsection (a-10) of this Section
do not apply to:

(1) transfers that occur at the place of business of a
federally licensed firearm dealer, if the federally
licensed firearm dealer conducts a background check on the
prospective recipient of the firearm in accordance with
Section 3.1 of this Act and follows all other applicable
federal, State, and local laws as if he or she were the
seller or transferor of the firearm, although the dealer
is not required to accept the firearm into his or her
inventory. The purchaser or transferee may be required by
the federally licensed firearm dealer to pay a fee not to
exceed $25 ~~$10~~ per firearm, which the dealer may retain as
compensation for performing the functions required under
this paragraph, plus the applicable fees authorized by
Section 3.1;

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

    (2) transfers as a bona fide gift to the transferor's husband, wife, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, nephew, niece, uncle, aunt, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law, or daughter-in-law;

    (3) transfers by persons acting pursuant to operation of law or a court order;

    (4) transfers on the grounds of a gun show under subsection (a-5) of this Section;

    (5) the delivery of a firearm by its owner to a gunsmith for service or repair, the return of the firearm to its owner by the gunsmith, or the delivery of a firearm by a gunsmith to a federally licensed firearms dealer for service or repair and the return of the firearm to the gunsmith;

    (6) temporary transfers that occur while in the home of the unlicensed transferee, if the unlicensed transferee is not otherwise prohibited from possessing firearms and the unlicensed transferee reasonably believes that possession of the firearm is necessary to prevent imminent death or great bodily harm to the unlicensed transferee;

    (7) transfers to a law enforcement or corrections agency or a law enforcement or corrections officer acting within the course and scope of his or her official duties;

    (8) transfers of firearms that have been rendered

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

permanently inoperable to a nonprofit historical society, museum, or institutional collection; and

(9) transfers to a person who is exempt from the requirement of possessing a Firearm Owner's Identification Card under Section 2 of this Act.

(a-20) The Illinois State Police shall develop an Internet-based system for individuals to determine the validity of a Firearm Owner's Identification Card prior to the sale or transfer of a firearm. The Illinois State Police shall have the Internet-based system updated ~~completed~~ and available for use by January 1, 2024 ~~July 1, 2015~~. The Illinois State Police shall adopt rules not inconsistent with this Section to implement this system, but no rule shall allow the Illinois State Police to retain records in contravention of State and federal law.

(a-25) On or before January 1, 2022, the Illinois State Police shall develop an Internet-based system upon which the serial numbers of firearms that have been reported stolen are available for public access for individuals to ensure any firearms are not reported stolen prior to the sale or transfer of a firearm under this Section. The Illinois State Police shall have the Internet-based system completed and available for use by July 1, 2022. The Illinois State Police shall adopt rules not inconsistent with this Section to implement this system.

(b) Any person within this State who transfers or causes

Public Act 102-1116

HB5471 Enrolled                         LRB102 24372 BMS 33606 b

to be transferred any firearm, stun gun, or taser shall keep a
record of such transfer for a period of 10 years from the date
of transfer. <u>Any person within this State who receives any</u>
<u>firearm, stun gun, or taser pursuant to subsection (a-10)</u>
<u>shall provide a record of the transfer within 10 days of the</u>
<u>transfer to a federally licensed firearm dealer and shall not</u>
<u>be required to maintain a transfer record. The federally</u>
<u>licensed firearm dealer shall maintain the transfer record for</u>
<u>20 years from the date of receipt. A federally licensed</u>
<u>firearm dealer may charge a fee not to exceed $25 to retain the</u>
<u>record. The record shall be provided and maintained in either</u>
<u>an electronic or paper format. The federally licensed firearm</u>
<u>dealer shall not be liable for the accuracy of any information</u>
<u>in the transfer record submitted pursuant to this Section.</u>
Such <u>records</u> ~~record~~ shall contain the date of the transfer;
the description, serial number or other information
identifying the firearm, stun gun, or taser if no serial
number is available; and, if the transfer was completed within
this State, the transferee's Firearm Owner's Identification
Card number and any approval number or documentation provided
by the Illinois State Police pursuant to subsection (a-10) of
this Section; if the transfer was not completed within this
State, the record shall contain the name and address of the
transferee. On or after January 1, 2006, the record shall
contain the date of application for transfer of the firearm.
On demand of a peace officer such transferor shall produce for

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

inspection such record of transfer. <u>For any transfer pursuant to subsection (a-10) of this Section, on the demand of a peace officer, such transferee shall identify the federally licensed firearm dealer maintaining the transfer record.</u> If the transfer or sale took place at a gun show, the record shall include the unique identification number. Failure to record the unique identification number or approval number is a petty offense. For transfers of a firearm, stun gun, or taser made on or after January 18, 2019 (the effective date of Public Act 100-1178), failure by the private seller to maintain the transfer records in accordance with this Section<u>, or failure by a transferee pursuant to subsection a-10 of this Section to identify the federally licensed firearm dealer maintaining the transfer record,</u> is a Class A misdemeanor for the first offense and a Class 4 felony for a second or subsequent offense <u>occurring within 10 years of the first offense and the second offense was committed after conviction of the first offense. Whenever any person who has not previously been convicted of any violation of subsection (a-5), the court may grant supervision pursuant to and consistent with the limitations of Section 5-6-1 of the Unified Code of Corrections</u>. A transferee <u>or transferor</u> shall not be criminally liable under this Section provided that he or she provides the Illinois State Police with the transfer records in accordance with procedures established by the Illinois State Police. The Illinois State Police shall establish, by rule, a standard form on its

Public Act 102-1116

HB5471 Enrolled                                    LRB102 24372 BMS 33606 b

website.

(b-5) Any resident may purchase ammunition from a person within or outside of Illinois if shipment is by United States mail or by a private express carrier authorized by federal law to ship ammunition. Any resident purchasing ammunition within or outside the State of Illinois must provide the seller with a copy of his or her valid Firearm Owner's Identification Card or valid concealed carry license and either his or her Illinois driver's license or Illinois State Identification Card prior to the shipment of the ammunition. The ammunition may be shipped only to an address on either of those 2 documents.

(c) The provisions of this Section regarding the transfer of firearm ammunition shall not apply to those persons specified in paragraph (b) of Section 2 of this Act.
(Source: P.A. 102-538, eff. 8-20-21; 102-813, eff. 5-13-22.)


(Text of Section after amendment by P.A. 102-237)

Sec. 3. (a) Except as provided in Section 3a, no person may knowingly transfer, or cause to be transferred, any firearm, firearm ammunition, stun gun, or taser to any person within this State unless the transferee with whom he deals displays either: (1) a currently valid Firearm Owner's Identification Card which has previously been issued in his or her name by the Illinois State Police under the provisions of this Act; or (2) a currently valid license to carry a concealed firearm which

Public Act 102-1116

HB5471 Enrolled                         LRB102 24372 BMS 33606 b

has previously been issued in his or her name by the Illinois
State Police under the Firearm Concealed Carry Act. In
addition, all firearm, stun gun, and taser transfers by
federally licensed firearm dealers are subject to Section 3.1.

(a-5) Any person who is not a federally licensed firearm
dealer and who desires to transfer or sell a firearm while that
person is on the grounds of a gun show must, before selling or
transferring the firearm, request the Illinois State Police to
conduct a background check on the prospective recipient of the
firearm in accordance with Section 3.1.

(a-10) Notwithstanding item (2) of subsection (a) of this
Section, any person who is not a federally licensed firearm
dealer and who desires to transfer or sell a firearm or
firearms to any person who is not a federally licensed firearm
dealer shall, before selling or transferring the firearms,
contact a federal firearm license dealer under paragraph (1)
of subsection (a-15) of this Section to conduct the transfer
or the Illinois State Police with the transferee's or
purchaser's Firearm Owner's Identification Card number to
determine the validity of the transferee's or purchaser's
Firearm Owner's Identification Card under State and federal
law, including the National Instant Criminal Background Check
System. This subsection shall not be effective until July 1,
2023 January 1, 2024. Until that date the transferor shall
contact the Illinois State Police with the transferee's or
purchaser's Firearm Owner's Identification Card number to

Public Act 102-1116

HB5471 Enrolled                        LRB102 24372 BMS 33606 b

determine the validity of the card. The Illinois State Police
may adopt rules concerning the implementation of this
subsection. The Illinois State Police shall provide the seller
or transferor an approval number if the purchaser's Firearm
Owner's Identification Card is valid. Approvals issued by the
Illinois State Police for the purchase of a firearm pursuant
to this subsection are valid for 30 days from the date of
issue.

   (a-15) The provisions of subsection (a-10) of this Section
do not apply to:

      (1) transfers that occur at the place of business of a
   federally licensed firearm dealer, if the federally
   licensed firearm dealer conducts a background check on the
   prospective recipient of the firearm in accordance with
   Section 3.1 of this Act and follows all other applicable
   federal, State, and local laws as if he or she were the
   seller or transferor of the firearm, although the dealer
   is not required to accept the firearm into his or her
   inventory. The purchaser or transferee may be required by
   the federally licensed firearm dealer to pay a fee not to
   exceed $25 per firearm, which the dealer may retain as
   compensation for performing the functions required under
   this paragraph, plus the applicable fees authorized by
   Section 3.1;

      (2) transfers as a bona fide gift to the transferor's
   husband, wife, son, daughter, stepson, stepdaughter,

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

father, mother, stepfather, stepmother, brother, sister, nephew, niece, uncle, aunt, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law, or daughter-in-law;

(3) transfers by persons acting pursuant to operation of law or a court order;

(4) transfers on the grounds of a gun show under subsection (a-5) of this Section;

(5) the delivery of a firearm by its owner to a gunsmith for service or repair, the return of the firearm to its owner by the gunsmith, or the delivery of a firearm by a gunsmith to a federally licensed firearms dealer for service or repair and the return of the firearm to the gunsmith;

(6) temporary transfers that occur while in the home of the unlicensed transferee, if the unlicensed transferee is not otherwise prohibited from possessing firearms and the unlicensed transferee reasonably believes that possession of the firearm is necessary to prevent imminent death or great bodily harm to the unlicensed transferee;

(7) transfers to a law enforcement or corrections agency or a law enforcement or corrections officer acting within the course and scope of his or her official duties;

(8) transfers of firearms that have been rendered permanently inoperable to a nonprofit historical society, museum, or institutional collection; and

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

    (9) transfers to a person who is exempt from the requirement of possessing a Firearm Owner's Identification Card under Section 2 of this Act.

    (a-20) The Illinois State Police shall develop an Internet-based system for individuals to determine the validity of a Firearm Owner's Identification Card prior to the sale or transfer of a firearm. The Illinois State Police shall have the Internet-based system updated and available for use by January 1, 2024. The Illinois State Police shall adopt rules not inconsistent with this Section to implement this system; but no rule shall allow the Illinois State Police to retain records in contravention of State and federal law.

    (a-25) On or before January 1, 2022, the Illinois State Police shall develop an Internet-based system upon which the serial numbers of firearms that have been reported stolen are available for public access for individuals to ensure any firearms are not reported stolen prior to the sale or transfer of a firearm under this Section. The Illinois State Police shall have the Internet-based system completed and available for use by July 1, 2022. The Illinois State Police shall adopt rules not inconsistent with this Section to implement this system.

    (b) Any person within this State who transfers or causes to be transferred any firearm, stun gun, or taser shall keep a record of such transfer for a period of 10 years from the date of transfer. Any person within this State who receives any

Public Act 102-1116

HB5471 Enrolled                                LRB102 24372 BMS 33606 b

firearm, stun gun, or taser pursuant to subsection (a-10)
shall provide a record of the transfer within 10 days of the
transfer to a federally licensed firearm dealer and shall not
be required to maintain a transfer record. The federally
licensed firearm dealer shall maintain the transfer record for
20 years from the date of receipt. A federally licensed
firearm dealer may charge a fee not to exceed $25 to retain the
record. The record shall be provided and maintained in either
an electronic or paper format. The federally licensed firearm
dealer shall not be liable for the accuracy of any information
in the transfer record submitted pursuant to this Section.
Such records shall contain the date of the transfer; the
description, serial number or other information identifying
the firearm, stun gun, or taser if no serial number is
available; and, if the transfer was completed within this
State, the transferee's Firearm Owner's Identification Card
number and any approval number or documentation provided by
the Illinois State Police pursuant to subsection (a-10) of
this Section; if the transfer was not completed within this
State, the record shall contain the name and address of the
transferee. On or after January 1, 2006, the record shall
contain the date of application for transfer of the firearm.
On demand of a peace officer such transferor shall produce for
inspection such record of transfer. For any transfer pursuant
to subsection (a-10) of this Section, on the demand of a peace
officer, such transferee shall identify the federally licensed

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

firearm dealer maintaining the transfer record. If the
transfer or sale took place at a gun show, the record shall
include the unique identification number. Failure to record
the unique identification number or approval number is a petty
offense. For transfers of a firearm, stun gun, or taser made on
or after January 18, 2019 (the effective date of Public Act
100-1178), failure by the private seller to maintain the
transfer records in accordance with this Section, or failure
by a transferee pursuant to subsection a-10 of this Section to
identify the federally licensed firearm dealer maintaining the
transfer record, is a Class A misdemeanor for the first
offense and a Class 4 felony for a second or subsequent offense
occurring within 10 years of the first offense and the second
offense was committed after conviction of the first offense.
Whenever any person who has not previously been convicted of
any violation of subsection (a-5), the court may grant
supervision pursuant to and consistent with the limitations of
Section 5-6-1 of the Unified Code of Corrections. A transferee
or transferor shall not be criminally liable under this
Section provided that he or she provides the Illinois State
Police with the transfer records in accordance with procedures
established by the Illinois State Police. The Illinois State
Police shall establish, by rule, a standard form on its
website.

    (b-5) Any resident may purchase ammunition from a person
within or outside of Illinois if shipment is by United States

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

mail or by a private express carrier authorized by federal law
to ship ammunition. Any resident purchasing ammunition within
or outside the State of Illinois must provide the seller with a
copy of his or her valid Firearm Owner's Identification Card
or valid concealed carry license and either his or her
Illinois driver's license or Illinois State Identification
Card prior to the shipment of the ammunition. The ammunition
may be shipped only to an address on either of those 2
documents.

   (c) The provisions of this Section regarding the transfer
of firearm ammunition shall not apply to those persons
specified in paragraph (b) of Section 2 of this Act.
(Source: P.A. 102-237, eff. 1-1-24; 102-538, eff. 8-20-21;
102-813, eff. 5-13-22.)


   (430 ILCS 65/4) (from Ch. 38, par. 83-4)
   Sec. 4. Application for Firearm Owner's Identification
Cards.
   (a) Each applicant for a Firearm Owner's Identification
Card must:
      (1) Submit an application as made available by the
   Illinois State Police; and
      (2) Submit evidence to the Illinois State Police that:
         (i) This subparagraph (i) applies through the
      180th day following July 12, 2019 (the effective date
      of Public Act 101-80). He or she is 21 years of age or

Public Act 102-1116

HB5471 Enrolled                    LRB102 24372 BMS 33606 b

over, or if he or she is under 21 years of age that he
or she has the written consent of his or her parent or
legal guardian to possess and acquire firearms and
firearm ammunition and that he or she has never been
convicted of a misdemeanor other than a traffic
offense or adjudged delinquent, provided, however,
that such parent or legal guardian is not an
individual prohibited from having a Firearm Owner's
Identification Card and files an affidavit with the
Department as prescribed by the Department stating
that he or she is not an individual prohibited from
having a Card;

(i-5) This subparagraph (i-5) applies on and after
the 181st day following July 12, 2019 (the effective
date of Public Act 101-80). He or she is 21 years of
age or over, or if he or she is under 21 years of age
that he or she has never been convicted of a
misdemeanor other than a traffic offense or adjudged
delinquent and is an active duty member of the United
States Armed Forces or the Illinois National Guard or
has the written consent of his or her parent or legal
guardian to possess and acquire firearms and firearm
ammunition, provided, however, that such parent or
legal guardian is not an individual prohibited from
having a Firearm Owner's Identification Card and files
an affidavit with the Illinois State Police as

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

prescribed by the Illinois State Police stating that
he or she is not an individual prohibited from having a
Card or the active duty member of the United States
Armed Forces or the Illinois National Guard under 21
years of age annually submits proof to the Illinois
State Police, in a manner prescribed by the Illinois
State Police;

(ii) He or she has not been convicted of a felony
under the laws of this or any other jurisdiction;

(iii) He or she is not addicted to narcotics;

(iv) He or she has not been a patient in a mental
health facility within the past 5 years or, if he or
she has been a patient in a mental health facility more
than 5 years ago submit the certification required
under subsection (u) of Section 8 of this Act;

(v) He or she is not a person with an intellectual
disability;

(vi) He or she is not a noncitizen who is
unlawfully present in the United States under the laws
of the United States;

(vii) He or she is not subject to an existing order
of protection prohibiting him or her from possessing a
firearm;

(viii) He or she has not been convicted within the
past 5 years of battery, assault, aggravated assault,
violation of an order of protection, or a

Public Act 102-1116

HB5471 Enrolled                         LRB102 24372 BMS 33606 b

substantially similar offense in another jurisdiction, in which a firearm was used or possessed;

(ix) He or she has not been convicted of domestic battery, aggravated domestic battery, or a substantially similar offense in another jurisdiction committed before, on or after January 1, 2012 (the effective date of Public Act 97-158). If the applicant knowingly and intelligently waives the right to have an offense described in this clause (ix) tried by a jury, and by guilty plea or otherwise, results in a conviction for an offense in which a domestic relationship is not a required element of the offense but in which a determination of the applicability of 18 U.S.C. 922(g)(9) is made under Section 112A-11.1 of the Code of Criminal Procedure of 1963, an entry by the court of a judgment of conviction for that offense shall be grounds for denying the issuance of a Firearm Owner's Identification Card under this Section;

(x) (Blank);

(xi) He or she is not a noncitizen who has been admitted to the United States under a non-immigrant visa (as that term is defined in Section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26))), or that he or she is a noncitizen who has been lawfully admitted to the United States under a non-immigrant visa if that noncitizen is:

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

      (1)  admitted  to  the  United  States  for  lawful
hunting or sporting purposes;

      (2)  an  official  representative  of  a  foreign
government who is:

        (A)  accredited  to  the  United  States
Government  or  the  Government's  mission  to  an
international  organization  having  its
headquarters in the United States; or

        (B) en route to or from another country to
which that noncitizen is accredited;

      (3)  an  official  of  a  foreign  government  or
distinguished  foreign  visitor  who  has  been  so
designated by the Department of State;

      (4)  a  foreign  law  enforcement  officer  of  a
friendly  foreign  government  entering  the  United
States on official business; or

      (5)  one  who  has  received  a  waiver  from  the
Attorney General of the United States pursuant to
18 U.S.C. 922(y)(3);

(xii)  He  or  she  is  not  a  minor  subject  to  a
petition  filed  under  Section  5-520  of  the  Juvenile
Court  Act  of  1987  alleging  that  the  minor  is  a
delinquent minor for the commission of an offense that
if committed by an adult would be a felony;

(xiii)  He  or  she  is  not  an  adult  who  had  been
adjudicated  a  delinquent  minor  under  the  Juvenile

Public Act 102-1116

HB5471 Enrolled                                LRB102 24372 BMS 33606 b

Court Act of 1987 for the commission of an offense that
if committed by an adult would be a felony;

(xiv) He or she is a resident of the State of
Illinois;

(xv) He or she has not been adjudicated as a person
with a mental disability;

(xvi) He or she has not been involuntarily
admitted into a mental health facility; and

(xvii) He or she is not a person with a
developmental disability; and

(3) Upon request by the Illinois State Police, sign a
release on a form prescribed by the Illinois State Police
waiving any right to confidentiality and requesting the
disclosure to the Illinois State Police of limited mental
health institution admission information from another
state, the District of Columbia, any other territory of
the United States, or a foreign nation concerning the
applicant for the sole purpose of determining whether the
applicant is or was a patient in a mental health
institution and disqualified because of that status from
receiving a Firearm Owner's Identification Card. No mental
health care or treatment records may be requested. The
information received shall be destroyed within one year of
receipt.

(a-5) Each applicant for a Firearm Owner's Identification
Card who is over the age of 18 shall furnish to the Illinois

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

State Police either his or her Illinois driver's license number or Illinois Identification Card number, except as provided in subsection (a-10).

(a-10) Each applicant for a Firearm Owner's Identification Card, who is employed as a law enforcement officer, an armed security officer in Illinois, or by the United States Military permanently assigned in Illinois and who is not an Illinois resident, shall furnish to the Illinois State Police his or her driver's license number or state identification card number from his or her state of residence. The Illinois State Police may adopt rules to enforce the provisions of this subsection (a-10).

(a-15) If an applicant applying for a Firearm Owner's Identification Card moves from the residence address named in the application, he or she shall immediately notify in a form and manner prescribed by the Illinois State Police of that change of address.

(a-20) Each applicant for a Firearm Owner's Identification Card shall furnish to the Illinois State Police his or her photograph. An applicant who is 21 years of age or older seeking a religious exemption to the photograph requirement must furnish with the application an approved copy of United States Department of the Treasury Internal Revenue Service Form 4029. In lieu of a photograph, an applicant regardless of age seeking a religious exemption to the photograph requirement shall submit fingerprints on a form and manner

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

prescribed by the Illinois State Police with his or her
application.

(a-25) Beginning January 1, 2023, each applicant for the
issuance of a Firearm Owner's Identification Card may include
a full set of his or her fingerprints in electronic format to
the Illinois State Police, unless the applicant has previously
provided a full set of his or her fingerprints to the Illinois
State Police under this Act or the Firearm Concealed Carry
Act.

The fingerprints must be transmitted through a live scan
fingerprint vendor licensed by the Department of Financial and
Professional Regulation. The fingerprints shall be checked
against the fingerprint records now and hereafter filed in the
Illinois State Police and Federal Bureau of Investigation
criminal history records databases, including all available
State and local criminal history record information files.

The Illinois State Police shall charge applicants a
one-time fee for conducting the criminal history record check,
which shall be deposited into the State Police Services Fund
and shall not exceed the actual cost of the State and national
criminal history record check.

(a-26) The Illinois State Police shall research, explore,
and report to the General Assembly by January 1, 2022 on the
feasibility of permitting voluntarily submitted fingerprints
obtained for purposes other than Firearm Owner's
Identification Card enforcement that are contained in the

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

Illinois State Police database for purposes of this Act.

(b) Each application form shall include the following statement printed in bold type: "Warning: Entering false information on an application for a Firearm Owner's Identification Card is punishable as a Class 2 felony in accordance with subsection (d-5) of Section 14 of the Firearm Owners Identification Card Act.".

(c) Upon such written consent, pursuant to Section 4, paragraph (a)(2)(i), the parent or legal guardian giving the consent shall be liable for any damages resulting from the applicant's use of firearms or firearm ammunition.
(Source: P.A. 101-80, eff. 7-12-19; 102-237, eff. 1-1-22; 102-538, eff. 8-20-21; 102-813, eff. 5-13-22; 102-1030, eff. 5-27-22.)


(430 ILCS 65/4.1 new)
Sec. 4.1. Assault weapon, .50 caliber rifle, assault weapon attachment, or .50 caliber cartridge endorsement.

(a) The endorsement affidavit form completed pursuant to Section 24-1.9 of the Criminal Code of 2012 must be executed electronically through the individual's Firearm Owner's Identification Card account.

(b) The Illinois State Police shall adopt rules in accordance with this Section for the electronic submission of an endorsement affidavit.

(c) Entering false information on the endorsement

Public Act 102-1116

HB5471 Enrolled                            LRB102 24372 BMS 33606 b

<u>affidavit form is a violation of this Act and is also</u>
<u>punishable as perjury under Section 32-2 of the Criminal Code</u>
<u>of 2012.</u>

(430 ILCS 65/8) (from Ch. 38, par. 83-8)

Sec. 8. Grounds for denial and revocation. The Illinois
State Police has authority to deny an application for or to
revoke and seize a Firearm Owner's Identification Card
previously issued under this Act only if the Illinois State
Police finds that the applicant or the person to whom such card
was issued is or was at the time of issuance:

(a) A person under 21 years of age who has been
convicted of a misdemeanor other than a traffic offense or
adjudged delinquent;

(b) This subsection (b) applies through the 180th day
following July 12, 2019 (the effective date of Public Act
101-80). A person under 21 years of age who does not have
the written consent of his parent or guardian to acquire
and possess firearms and firearm ammunition, or whose
parent or guardian has revoked such written consent, or
where such parent or guardian does not qualify to have a
Firearm Owner's Identification Card;

(b-5) This subsection (b-5) applies on and after the
181st day following July 12, 2019 (the effective date of
Public Act 101-80). A person under 21 years of age who is
not an active duty member of the United States Armed

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

Forces <u>or the Illinois National Guard</u> and does not have
the written consent of his or her parent or guardian to
acquire and possess firearms and firearm ammunition, or
whose parent or guardian has revoked such written consent,
or where such parent or guardian does not qualify to have a
Firearm Owner's Identification Card;

(c) A person convicted of a felony under the laws of
this or any other jurisdiction;

(d) A person addicted to narcotics;

(e) A person who has been a patient of a mental health
facility within the past 5 years or a person who has been a
patient in a mental health facility more than 5 years ago
who has not received the certification required under
subsection (u) of this Section. An active law enforcement
officer employed by a unit of government or a Department
of Corrections employee authorized to possess firearms who
is denied, revoked, or has his or her Firearm Owner's
Identification Card seized under this subsection (e) may
obtain relief as described in subsection (c-5) of Section
10 of this Act if the officer or employee did not act in a
manner threatening to the officer or employee, another
person, or the public as determined by the treating
clinical psychologist or physician, and the officer or
employee seeks mental health treatment;

(f) A person whose mental condition is of such a
nature that it poses a clear and present danger to the

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

applicant, any other person or persons, or the community;

(g) A person who has an intellectual disability;

(h) A person who intentionally makes a false statement in the Firearm Owner's Identification Card application <u>or endorsement affidavit</u>;

(i) A noncitizen who is unlawfully present in the United States under the laws of the United States;

(i-5) A noncitizen who has been admitted to the United States under a non-immigrant visa (as that term is defined in Section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26))), except that this subsection (i-5) does not apply to any noncitizen who has been lawfully admitted to the United States under a non-immigrant visa if that noncitizen is:

(1) admitted to the United States for lawful hunting or sporting purposes;

(2) an official representative of a foreign government who is:

(A) accredited to the United States Government or the Government's mission to an international organization having its headquarters in the United States; or

(B) en route to or from another country to which that noncitizen is accredited;

(3) an official of a foreign government or distinguished foreign visitor who has been so

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

designated by the Department of State;

(4) a foreign law enforcement officer of a friendly foreign government entering the United States on official business; or

(5) one who has received a waiver from the Attorney General of the United States pursuant to 18 U.S.C. 922(y)(3);

(j) (Blank);

(k) A person who has been convicted within the past 5 years of battery, assault, aggravated assault, violation of an order of protection, or a substantially similar offense in another jurisdiction, in which a firearm was used or possessed;

(l) A person who has been convicted of domestic battery, aggravated domestic battery, or a substantially similar offense in another jurisdiction committed before, on or after January 1, 2012 (the effective date of Public Act 97-158). If the applicant or person who has been previously issued a Firearm Owner's Identification Card under this Act knowingly and intelligently waives the right to have an offense described in this paragraph (l) tried by a jury, and by guilty plea or otherwise, results in a conviction for an offense in which a domestic relationship is not a required element of the offense but in which a determination of the applicability of 18 U.S.C. 922(g)(9) is made under Section 112A-11.1 of the Code of

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

Criminal Procedure of 1963, an entry by the court of a judgment of conviction for that offense shall be grounds for denying an application for and for revoking and seizing a Firearm Owner's Identification Card previously issued to the person under this Act;

(m) (Blank);

(n) A person who is prohibited from acquiring or possessing firearms or firearm ammunition by any Illinois State statute or by federal law;

(o) A minor subject to a petition filed under Section 5-520 of the Juvenile Court Act of 1987 alleging that the minor is a delinquent minor for the commission of an offense that if committed by an adult would be a felony;

(p) An adult who had been adjudicated a delinquent minor under the Juvenile Court Act of 1987 for the commission of an offense that if committed by an adult would be a felony;

(q) A person who is not a resident of the State of Illinois, except as provided in subsection (a-10) of Section 4;

(r) A person who has been adjudicated as a person with a mental disability;

(s) A person who has been found to have a developmental disability;

(t) A person involuntarily admitted into a mental health facility; or

Public Act 102-1116

HB5471 Enrolled                                    LRB102 24372 BMS 33606 b

    (u)  A person who has had his or her Firearm Owner's Identification Card revoked or denied under subsection (e) of this Section or item (iv) of paragraph (2) of subsection (a) of Section 4 of this Act because he or she was a patient in a mental health facility as provided in subsection (e) of this Section, shall not be permitted to obtain a Firearm Owner's Identification Card, after the 5-year period has lapsed, unless he or she has received a mental health evaluation by a physician, clinical psychologist, or qualified examiner as those terms are defined in the Mental Health and Developmental Disabilities Code, and has received a certification that he or she is not a clear and present danger to himself, herself, or others. The physician, clinical psychologist, or qualified examiner making the certification and his or her employer shall not be held criminally, civilly, or professionally liable for making or not making the certification required under this subsection, except for willful or wanton misconduct. This subsection does not apply to a person whose firearm possession rights have been restored through administrative or judicial action under Section 10 or 11 of this Act.

Upon revocation of a person's Firearm Owner's Identification Card, the Illinois State Police shall provide notice to the person and the person shall comply with Section 9.5 of this Act.

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

(Source: P.A. 101-80, eff. 7-12-19; 102-538, eff. 8-20-21; 102-645, eff. 1-1-22; 102-813, eff. 5-13-22; 102-1030, eff. 5-27-22.)


    Section 15. The Firearms Restraining Order Act is amended by changing Sections 40, 45, and 55 as follows:


    (430 ILCS 67/40)

    Sec. 40. Plenary ~~Six month~~ orders.

    (a) A petitioner may request a ~~6 month~~ firearms restraining order for up to one year by filing an affidavit or verified pleading alleging that the respondent poses a significant danger of causing personal injury to himself, herself, or another in the near future by having in his or her custody or control, purchasing, possessing, or receiving a firearm, ammunition, and firearm parts that could be assembled to make an operable firearm. The petition shall also describe the number, types, and locations of any firearms, ammunition, and firearm parts that could be assembled to make an operable firearm presently believed by the petitioner to be possessed or controlled by the respondent. The firearms restraining order may be renewed for an additional period of up to one year in accordance with Section 45 of this Act.

    (b) If the respondent is alleged to pose a significant danger of causing personal injury to an intimate partner, or an intimate partner is alleged to have been the target of a

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

threat or act of violence by the respondent, the petitioner
shall make a good faith effort to provide notice to any and all
intimate partners of the respondent. The notice must include
the duration of time that the petitioner intends to petition
the court for a 6-month firearms restraining order, and, if
the petitioner is a law enforcement officer, referral to
relevant domestic violence or stalking advocacy or counseling
resources, if appropriate. The petitioner shall attest to
having provided the notice in the filed affidavit or verified
pleading. If, after making a good faith effort, the petitioner
is unable to provide notice to any or all intimate partners,
the affidavit or verified pleading should describe what
efforts were made.

(c) Every person who files a petition for a plenary
6-month firearms restraining order, knowing the information
provided to the court at any hearing or in the affidavit or
verified pleading to be false, is guilty of perjury under
Section 32-2 of the Criminal Code of 2012.

(d) Upon receipt of a petition for a plenary 6-month
firearms restraining order, the court shall order a hearing
within 30 days.

(e) In determining whether to issue a firearms restraining
order under this Section, the court shall consider evidence
including, but not limited to, the following:

(1) The unlawful and reckless use, display, or
brandishing of a firearm, ammunition, and firearm parts

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

that could be assembled to make an operable firearm by the
respondent.

(2) The history of use, attempted use, or threatened
use of physical force by the respondent against another
person.

(3) Any prior arrest of the respondent for a felony
offense.

(4) Evidence of the abuse of controlled substances or
alcohol by the respondent.

(5) A recent threat of violence or act of violence by
the respondent directed toward himself, herself, or
another.

(6) A violation of an emergency order of protection
issued under Section 217 of the Illinois Domestic Violence
Act of 1986 or Section 112A-17 of the Code of Criminal
Procedure of 1963 or of an order of protection issued
under Section 214 of the Illinois Domestic Violence Act of
1986 or Section 112A-14 of the Code of Criminal Procedure
of 1963.

(7) A pattern of violent acts or violent threats,
including, but not limited to, threats of violence or acts
of violence by the respondent directed toward himself,
herself, or another.

(f) At the hearing, the petitioner shall have the burden
of proving, by clear and convincing evidence, that the
respondent poses a significant danger of personal injury to

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

himself, herself, or another by having in his or her custody or
control, purchasing, possessing, or receiving a firearm,
ammunition, and firearm parts that could be assembled to make
an operable firearm.

(g) If the court finds that there is clear and convincing
evidence to issue a plenary firearms restraining order, the
court shall issue a firearms restraining order that shall be
in effect for up to one year, but not less than 6 months, 6
months subject to renewal under Section 45 of this Act or
termination under that Section.

(g-5) If the court issues a plenary 6-month firearms
restraining order, it shall, upon a finding of probable cause
that the respondent possesses firearms, ammunition, and
firearm parts that could be assembled to make an operable
firearm, issue a search warrant directing a law enforcement
agency to seize the respondent's firearms, ammunition, and
firearm parts that could be assembled to make an operable
firearm. The court may, as part of that warrant, direct the law
enforcement agency to search the respondent's residence and
other places where the court finds there is probable cause to
believe he or she is likely to possess the firearms,
ammunition, and firearm parts that could be assembled to make
an operable firearm. A return of the search warrant shall be
filed by the law enforcement agency within 4 days thereafter,
setting forth the time, date, and location that the search
warrant was executed and what items, if any, were seized.

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

     (h)  A  plenary  ~~6-month~~  firearms  restraining  order  shall
require:

          (1)  the  respondent  to  refrain  from  having  in  his  or
     her  custody  or  control,  purchasing,  possessing,  or
     receiving  additional  firearms,  ammunition,  and  firearm
     parts  that  could  be  assembled  to  make  an  operable  firearm
     for  the  duration  of  the  order  under  Section  8.2  of  the
     Firearm  Owners  Identification  Card  Act;  and

          (2)  the  respondent  to  comply  with  Section  9.5  of  the
     Firearm  Owners  Identification  Card  Act  and  subsection  (g)
     of  Section  70  of  the  Firearm  Concealed  Carry  Act.

     (i)  Except  as  otherwise  provided  in  subsection  (i-5)  of
this  Section,  upon  expiration  of  the  period  of  safekeeping,  if
the  firearms,  ammunition,  and  firearm  parts  that  could  be
assembled  to  make  an  operable  firearm  or  Firearm  Owner's
Identification  Card  cannot  be  returned  to  the  respondent
because  the  respondent  cannot  be  located,  fails  to  respond  to
requests  to  retrieve  the  firearms,  ammunition,  and  firearm
parts  that  could  be  assembled  to  make  an  operable  firearm,  or
is  not  lawfully  eligible  to  possess  a  firearm,  ammunition,  and
firearm  parts  that  could  be  assembled  to  make  an  operable
firearm,  upon  petition  from  the  local  law  enforcement  agency,
the  court  may  order  the  local  law  enforcement  agency  to
destroy  the  firearms,  ammunition,  and  firearm  parts  that  could
be  assembled  to  make  an  operable  firearm,  use  the  firearms,
ammunition,  and  firearm  parts  that  could  be  assembled  to  make

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

an operable firearm for training purposes, or use the firearms, ammunition, and firearm parts that could be assembled to make an operable firearm for any other application as deemed appropriate by the local law enforcement agency.

(i-5) A respondent whose Firearm Owner's Identification Card has been revoked or suspended may petition the court, if the petitioner is present in court or has notice of the respondent's petition, to transfer the respondent's firearm, ammunition, and firearm parts that could be assembled to make an operable firearm to a person who is lawfully able to possess the firearm, ammunition, and firearm parts that could be assembled to make an operable firearm if the person does not reside at the same address as the respondent. Notice of the petition shall be served upon the person protected by the emergency firearms restraining order. While the order is in effect, the transferee who receives the respondent's firearms, ammunition, and firearm parts that could be assembled to make an operable firearm must swear or affirm by affidavit that he or she shall not transfer the firearm, ammunition, and firearm parts that could be assembled to make an operable firearm to the respondent or to anyone residing in the same residence as the respondent.

(i-6) If a person other than the respondent claims title to any firearms, ammunition, and firearm parts that could be assembled to make an operable firearm surrendered under this

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

Section, he or she may petition the court, if the petitioner is
present in court or has notice of the petition, to have the
firearm, ammunition, and firearm parts that could be assembled
to make an operable firearm returned to him or her. If the
court determines that person to be the lawful owner of the
firearm, ammunition, and firearm parts that could be assembled
to make an operable firearm, the firearm, ammunition, and
firearm parts that could be assembled to make an operable
firearm shall be returned to him or her, provided that:

       (1) the firearm, ammunition, and firearm parts that
   could be assembled to make an operable firearm are removed
   from the respondent's custody, control, or possession and
   the lawful owner agrees to store the firearm, ammunition,
   and firearm parts that could be assembled to make an
   operable firearm in a manner such that the respondent does
   not have access to or control of the firearm, ammunition,
   and firearm parts that could be assembled to make an
   operable firearm; and

       (2) the firearm, ammunition, and firearm parts that
   could be assembled to make an operable firearm are not
   otherwise unlawfully possessed by the owner.

The person petitioning for the return of his or her
firearm, ammunition, and firearm parts that could be assembled
to make an operable firearm must swear or affirm by affidavit
that he or she: (i) is the lawful owner of the firearm,
ammunition, and firearm parts that could be assembled to make

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

an operable firearm; (ii) shall not transfer the firearm, ammunition, and firearm parts that could be assembled to make an operable firearm to the respondent; and (iii) will store the firearm, ammunition, and firearm parts that could be assembled to make an operable firearm in a manner that the respondent does not have access to or control of the firearm, ammunition, and firearm parts that could be assembled to make an operable firearm.

(j) If the court does not issue a firearms restraining order at the hearing, the court shall dissolve any emergency firearms restraining order then in effect.

(k) When the court issues a firearms restraining order under this Section, the court shall inform the respondent that he or she is entitled to one hearing during the period of the order to request a termination of the order, under Section 45 of this Act, and shall provide the respondent with a form to request a hearing.

(Source: P.A. 101-81, eff. 7-12-19; 102-237, eff. 1-1-22; 102-345, eff. 6-1-22; 102-538, eff. 8-20-21; 102-813, eff. 5-13-22.)


(430 ILCS 67/45)

Sec. 45. Termination and renewal.

(a) A person subject to a firearms restraining order issued under this Act may submit one written request at any time during the effective period of the order for a hearing to

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

terminate the order.

    (1) The respondent shall have the burden of proving by
a preponderance of the evidence that the respondent does
not pose a danger of causing personal injury to himself,
herself, or another in the near future by having in his or
her custody or control, purchasing, possessing, or
receiving a firearm, ammunition, and firearm parts that
could be assembled to make an operable firearm.

    (2) If the court finds after the hearing that the
respondent has met his or her burden, the court shall
terminate the order.

(b) A petitioner may request a renewal of a firearms
restraining order at any time within the 3 months before the
expiration of a firearms restraining order.

    (1) A court shall, after notice and a hearing, renew a
firearms restraining order issued under this part if the
petitioner proves, by clear and convincing evidence, that
the respondent continues to pose a danger of causing
personal injury to himself, herself, or another in the
near future by having in his or her custody or control,
purchasing, possessing, or receiving a firearm,
ammunition, and firearm parts that could be assembled to
make an operable firearm.

    (2) In determining whether to renew a firearms
restraining order issued under this Act, the court shall
consider evidence of the facts identified in subsection

Public Act 102-1116

HB5471 Enrolled                                    LRB102 24372 BMS 33606 b

(e) of Section 40 of this Act and any other evidence of an increased risk for violence.

(3) At the hearing, the petitioner shall have the burden of proving by clear and convincing evidence that the respondent continues to pose a danger of causing personal injury to himself, herself, or another in the near future by having in his or her custody or control, purchasing, possessing, or receiving a firearm, ammunition, and firearm parts that could be assembled to make an operable firearm.

(4) The renewal of a firearms restraining order issued under this Section shall be in effect for up to one year and may be renewed for an additional period of up to one year 6 months, subject to termination by further order of the court at a hearing held under this Section and further renewal by further order of the court under this Section.
(Source: P.A. 101-81, eff. 7-12-19; 102-345, eff. 6-1-22.)

(430 ILCS 67/55)

Sec. 55. Data maintenance by law enforcement agencies.

(a) All sheriffs shall furnish to the Illinois State Police, daily, in the form and detail the Illinois State Police Department requires, copies of any recorded firearms restraining orders issued by the court, and any foreign orders of protection filed by the clerk of the court, and transmitted to the sheriff by the clerk of the court under Section 50. Each

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

firearms restraining order shall be entered in the Law
Enforcement Agencies Data System (LEADS) on the same day it is
issued by the court. If an emergency firearms restraining
order was issued in accordance with Section 35 of this Act, the
order shall be entered in the Law Enforcement Agencies Data
System (LEADS) as soon as possible after receipt from the
clerk.

(b) The Illinois State Police shall maintain a complete
and systematic record and index of all valid and recorded
firearms restraining orders issued or filed under this Act.
The data shall be used to inform all dispatchers and law
enforcement officers at the scene of a violation of a firearms
restraining order of the effective dates and terms of any
recorded order of protection.

(c) The data, records, and transmittals required under
this Section shall pertain to any valid emergency or plenary
6 month firearms restraining order, whether issued in a civil
or criminal proceeding or authorized under the laws of another
state, tribe, or United States territory.
(Source: P.A. 101-81, eff. 7-12-19; 102-538, eff. 8-20-21.)


Section 25. The Criminal Code of 2012 is amended by
changing Section 24-1 and by adding Sections 24-1.9 and
24-1.10 as follows:


(720 ILCS 5/24-1) (from Ch. 38, par. 24-1)

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

Sec. 24-1. Unlawful use of weapons.

(a) A person commits the offense of unlawful use of weapons when he knowingly:

(1) Sells, manufactures, purchases, possesses or carries any bludgeon, black-jack, slung-shot, sand-club, sand-bag, metal knuckles or other knuckle weapon regardless of its composition, throwing star, or any knife, commonly referred to as a switchblade knife, which has a blade that opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife, or a ballistic knife, which is a device that propels a knifelike blade as a projectile by means of a coil spring, elastic material or compressed gas; or

(2) Carries or possesses with intent to use the same unlawfully against another, a dagger, dirk, billy, dangerous knife, razor, stiletto, broken bottle or other piece of glass, stun gun or taser or any other dangerous or deadly weapon or instrument of like character; or

(2.5) Carries or possesses with intent to use the same unlawfully against another, any firearm in a church, synagogue, mosque, or other building, structure, or place used for religious worship; or

(3) Carries on or about his person or in any vehicle, a tear gas gun projector or bomb or any object containing noxious liquid gas or substance, other than an object containing a non-lethal noxious liquid gas or substance

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

designed solely for personal defense carried by a person
18 years of age or older; or

(4) Carries or possesses in any vehicle or concealed
on or about his person except when on his land or in his
own abode, legal dwelling, or fixed place of business, or
on the land or in the legal dwelling of another person as
an invitee with that person's permission, any pistol,
revolver, stun gun or taser or other firearm, except that
this subsection (a) (4) does not apply to or affect
transportation of weapons that meet one of the following
conditions:

(i) are broken down in a non-functioning state; or

(ii) are not immediately accessible; or

(iii) are unloaded and enclosed in a case, firearm
carrying box, shipping box, or other container by a
person who has been issued a currently valid Firearm
Owner's Identification Card; or

(iv) are carried or possessed in accordance with
the Firearm Concealed Carry Act by a person who has
been issued a currently valid license under the
Firearm Concealed Carry Act; or

(5) Sets a spring gun; or

(6) Possesses any device or attachment of any kind
designed, used or intended for use in silencing the report
of any firearm; or

(7) Sells, manufactures, purchases, possesses or

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

carries:

    (i) a machine gun, which shall be defined for the purposes of this subsection as any weapon, which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot without manually reloading by a single function of the trigger, including the frame or receiver of any such weapon, or sells, manufactures, purchases, possesses, or carries any combination of parts designed or intended for use in converting any weapon into a machine gun, or any combination or parts from which a machine gun can be assembled if such parts are in the possession or under the control of a person;

    (ii) any rifle having one or more barrels less than 16 inches in length or a shotgun having one or more barrels less than 18 inches in length or any weapon made from a rifle or shotgun, whether by alteration, modification, or otherwise, if such a weapon as modified has an overall length of less than 26 inches; or

    (iii) any bomb, bomb-shell, grenade, bottle or other container containing an explosive substance of over one-quarter ounce for like purposes, such as, but not limited to, black powder bombs and Molotov cocktails or artillery projectiles; or

(8) Carries or possesses any firearm, stun gun or

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

taser or other deadly weapon in any place which is
licensed to sell intoxicating beverages, or at any public
gathering held pursuant to a license issued by any
governmental body or any public gathering at which an
admission is charged, excluding a place where a showing,
demonstration or lecture involving the exhibition of
unloaded firearms is conducted.

This subsection (a)(8) does not apply to any auction
or raffle of a firearm held pursuant to a license or permit
issued by a governmental body, nor does it apply to
persons engaged in firearm safety training courses; or

(9) Carries or possesses in a vehicle or on or about
his or her person any pistol, revolver, stun gun or taser
or firearm or ballistic knife, when he or she is hooded,
robed or masked in such manner as to conceal his or her
identity; or

(10) Carries or possesses on or about his or her
person, upon any public street, alley, or other public
lands within the corporate limits of a city, village, or
incorporated town, except when an invitee thereon or
therein, for the purpose of the display of such weapon or
the lawful commerce in weapons, or except when on his land
or in his or her own abode, legal dwelling, or fixed place
of business, or on the land or in the legal dwelling of
another person as an invitee with that person's
permission, any pistol, revolver, stun gun, or taser or

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

other firearm, except that this subsection (a) (10) does
not apply to or affect transportation of weapons that meet
one of the following conditions:

>        (i) are broken down in a non-functioning state; or
>
>        (ii) are not immediately accessible; or
>
>        (iii) are unloaded and enclosed in a case, firearm
>    carrying box, shipping box, or other container by a
>    person who has been issued a currently valid Firearm
>    Owner's Identification Card; or
>
>        (iv) are carried or possessed in accordance with
>    the Firearm Concealed Carry Act by a person who has
>    been issued a currently valid license under the
>    Firearm Concealed Carry Act.

A "stun gun or taser", as used in this paragraph (a)
means (i) any device which is powered by electrical
charging units, such as, batteries, and which fires one or
several barbs attached to a length of wire and which, upon
hitting a human, can send out a current capable of
disrupting the person's nervous system in such a manner as
to render him incapable of normal functioning or (ii) any
device which is powered by electrical charging units, such
as batteries, and which, upon contact with a human or
clothing worn by a human, can send out current capable of
disrupting the person's nervous system in such a manner as
to render him incapable of normal functioning; or

>    (11)   Sells,   manufactures,   _delivers,   imports,_

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

possesses, or purchases any assault weapon attachment or
.50 caliber cartridge in violation of Section 24-1.9 or
any explosive bullet. For purposes of this paragraph (a)
"explosive bullet" means the projectile portion of an
ammunition cartridge which contains or carries an
explosive charge which will explode upon contact with the
flesh of a human or an animal. "Cartridge" means a tubular
metal case having a projectile affixed at the front
thereof and a cap or primer at the rear end thereof, with
the propellant contained in such tube between the
projectile and the cap; or

(12) (Blank); or

(13) Carries or possesses on or about his or her
person while in a building occupied by a unit of
government, a billy club, other weapon of like character,
or other instrument of like character intended for use as
a weapon. For the purposes of this Section, "billy club"
means a short stick or club commonly carried by police
officers which is either telescopic or constructed of a
solid piece of wood or other man-made material; or

(14) Manufactures, possesses, sells, or offers to
sell, purchase, manufacture, import, transfer, or use any
device, part, kit, tool, accessory, or combination of
parts that is designed to and functions to increase the
rate of fire of a semiautomatic firearm above the standard
rate of fire for semiautomatic firearms that is not

Public Act 102-1116

HB5471 Enrolled                        LRB102 24372 BMS 33606 b

equipped with that device, part, or combination of parts; or

(15) Carries or possesses any assault weapon or .50 caliber rifle in violation of Section 24-1.9; or

(16) Manufactures, sells, delivers, imports, or purchases any assault weapon or .50 caliber rifle in violation of Section 24-1.9.

(b) Sentence. A person convicted of a violation of subsection 24-1(a)(1) through (5), subsection 24-1(a)(10), subsection 24-1(a)(11), ~~or~~ subsection 24-1(a)(13), or 24-1(a)(15) commits a Class A misdemeanor. A person convicted of a violation of subsection 24-1(a)(8) or 24-1(a)(9) commits a Class 4 felony; a person convicted of a violation of subsection 24-1(a)(6), ~~or~~ 24-1(a)(7)(ii), 24-1(a)(7)(iii), or 24-1(a)(16) ~~or (iii)~~ commits a Class 3 felony. A person convicted of a violation of subsection 24-1(a)(7)(i) commits a Class 2 felony and shall be sentenced to a term of imprisonment of not less than 3 years and not more than 7 years, unless the weapon is possessed in the passenger compartment of a motor vehicle as defined in Section 1-146 of the Illinois Vehicle Code, or on the person, while the weapon is loaded, in which case it shall be a Class X felony. A person convicted of a second or subsequent violation of subsection 24-1(a)(4), 24-1(a)(8), 24-1(a)(9), ~~or~~ 24-1(a)(10), or 24-1(a)(15) commits a Class 3 felony. A person convicted of a violation of subsection 24-1(a)(2.5) or 24-1(a)(14) commits a Class 2

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

felony. The possession of each weapon or device in violation
of this Section constitutes a single and separate violation.

(c) Violations in specific places.

(1) A person who violates subsection 24-1(a)(6) or
24-1(a)(7) in any school, regardless of the time of day or
the time of year, in residential property owned, operated
or managed by a public housing agency or leased by a public
housing agency as part of a scattered site or mixed-income
development, in a public park, in a courthouse, on the
real property comprising any school, regardless of the
time of day or the time of year, on residential property
owned, operated or managed by a public housing agency or
leased by a public housing agency as part of a scattered
site or mixed-income development, on the real property
comprising any public park, on the real property
comprising any courthouse, in any conveyance owned, leased
or contracted by a school to transport students to or from
school or a school related activity, in any conveyance
owned, leased, or contracted by a public transportation
agency, or on any public way within 1,000 feet of the real
property comprising any school, public park, courthouse,
public transportation facility, or residential property
owned, operated, or managed by a public housing agency or
leased by a public housing agency as part of a scattered
site or mixed-income development commits a Class 2 felony
and shall be sentenced to a term of imprisonment of not

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

less than 3 years and not more than 7 years.

(1.5)   A   person   who   violates   subsection   24-1(a)(4),
24-1(a)(9),   or   24-1(a)(10)   in   any   school,   regardless   of
the   time   of   day   or   the   time   of   year,   in   residential
property   owned,   operated,   or   managed   by   a   public   housing
agency   or   leased   by   a   public   housing   agency   as   part   of   a
scattered   site   or   mixed-income   development,   in   a   public
park,   in   a   courthouse,   on   the   real   property   comprising   any
school,   regardless   of   the   time   of   day   or   the   time   of   year,
on   residential   property   owned,   operated,   or   managed   by   a
public   housing   agency   or   leased   by   a   public   housing   agency
as   part   of   a   scattered   site   or   mixed-income   development,
on   the   real   property   comprising   any   public   park,   on   the
real   property   comprising   any   courthouse,   in   any   conveyance
owned,   leased,   or   contracted   by   a   school   to   transport
students   to   or   from   school   or   a   school   related   activity,
in   any   conveyance   owned,   leased,   or   contracted   by   a   public
transportation   agency,   or   on   any   public   way   within   1,000
feet   of   the   real   property   comprising   any   school,   public
park,   courthouse,   public   transportation   facility,   or
residential   property   owned,   operated,   or   managed   by   a
public   housing   agency   or   leased   by   a   public   housing   agency
as   part   of   a   scattered   site   or   mixed-income   development
commits a Class 3 felony.

(2)   A   person   who   violates   subsection   24-1(a)(1),
24-1(a)(2),   or   24-1(a)(3)   in   any   school,   regardless   of   the

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

time of day or the time of year, in residential property
owned, operated or managed by a public housing agency or
leased by a public housing agency as part of a scattered
site or mixed-income development, in a public park, in a
courthouse, on the real property comprising any school,
regardless of the time of day or the time of year, on
residential property owned, operated or managed by a
public housing agency or leased by a public housing agency
as part of a scattered site or mixed-income development,
on the real property comprising any public park, on the
real property comprising any courthouse, in any conveyance
owned, leased or contracted by a school to transport
students to or from school or a school related activity,
in any conveyance owned, leased, or contracted by a public
transportation agency, or on any public way within 1,000
feet of the real property comprising any school, public
park, courthouse, public transportation facility, or
residential property owned, operated, or managed by a
public housing agency or leased by a public housing agency
as part of a scattered site or mixed-income development
commits a Class 4 felony. "Courthouse" means any building
that is used by the Circuit, Appellate, or Supreme Court
of this State for the conduct of official business.

     (3) Paragraphs (1), (1.5), and (2) of this subsection
(c) shall not apply to law enforcement officers or
security officers of such school, college, or university

Public Act 102-1116

HB5471 Enrolled                            LRB102 24372 BMS 33606 b

or to students carrying or possessing firearms for use in
training courses, parades, hunting, target shooting on
school ranges, or otherwise with the consent of school
authorities and which firearms are transported unloaded
enclosed in a suitable case, box, or transportation
package.

(4) For the purposes of this subsection (c), "school"
means any public or private elementary or secondary
school, community college, college, or university.

(5) For the purposes of this subsection (c), "public
transportation agency" means a public or private agency
that provides for the transportation or conveyance of
persons by means available to the general public, except
for transportation by automobiles not used for conveyance
of the general public as passengers; and "public
transportation facility" means a terminal or other place
where one may obtain public transportation.

(d) The presence in an automobile other than a public
omnibus of any weapon, instrument or substance referred to in
subsection (a)(7) is prima facie evidence that it is in the
possession of, and is being carried by, all persons occupying
such automobile at the time such weapon, instrument or
substance is found, except under the following circumstances:
(i) if such weapon, instrument or instrumentality is found
upon the person of one of the occupants therein; or (ii) if
such weapon, instrument or substance is found in an automobile

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

operated for hire by a duly licensed driver in the due, lawful
and proper pursuit of his or her trade, then such presumption
shall not apply to the driver.

    (e) Exemptions.

        (1) Crossbows, Common or Compound bows and Underwater
Spearguns are exempted from the definition of ballistic
knife as defined in paragraph (1) of subsection (a) of
this Section.

        (2) The provision of paragraph (1) of subsection (a)
of this Section prohibiting the sale, manufacture,
purchase, possession, or carrying of any knife, commonly
referred to as a switchblade knife, which has a blade that
opens automatically by hand pressure applied to a button,
spring or other device in the handle of the knife, does not
apply to a person who possesses a currently valid Firearm
Owner's Identification Card previously issued in his or
her name by the Illinois State Police or to a person or an
entity engaged in the business of selling or manufacturing
switchblade knives.

(Source: P.A. 101-223, eff. 1-1-20; 102-538, eff. 8-20-21.)


    (720 ILCS 5/24-1.9 new)

    <u>Sec. 24-1.9. Manufacture, possession, delivery, sale, and</u>
<u>purchase of assault weapons, .50 caliber rifles, and .50</u>
<u>caliber cartridges.</u>

    <u>(a) Definitions. In this Section:</u>

Public Act 102-1116

HB5471 Enrolled                            LRB102 24372 BMS 33606 b

(1) "Assault weapon" means any of the following, except as provided in subdivision (2) of this subsection:

(A) A semiautomatic rifle that has the capacity to accept a detachable magazine or that may be readily modified to accept a detachable magazine, if the firearm has one or more of the following:

(i) a pistol grip or thumbhole stock;

(ii) any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(iii) a folding, telescoping, thumbhole, or detachable stock, or a stock that is otherwise foldable or adjustable in a manner that operates to reduce the length, size, or any other dimension, or otherwise enhances the concealability of, the weapon;

(iv) a flash suppressor;

(v) a grenade launcher;

(vi) a shroud attached to the barrel or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel.

(B) A semiautomatic rifle that has a fixed magazine with the capacity to accept more than 10 rounds, except for an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

ammunition.

(C) A semiautomatic pistol that has the capacity to accept a detachable magazine or that may be readily modified to accept a detachable magazine, if the firearm has one or more of the following:

(i) a threaded barrel;

(ii) a second pistol grip or another feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

(iii) a shroud attached to the barrel or that partially or completely encircles the barrel, allowing the bearer to hold the firearm with the non-trigger hand without being burned, but excluding a slide that encloses the barrel;

(iv) a flash suppressor;

(v) the capacity to accept a detachable magazine at some location outside of the pistol grip; or

(vi) a buffer tube, arm brace, or other part that protrudes horizontally behind the pistol grip and is designed or redesigned to allow or facilitate a firearm to be fired from the shoulder.

(D) A semiautomatic pistol that has a fixed magazine with the capacity to accept more than 15 rounds.

(E) Any shotgun with a revolving cylinder.

(F) A semiautomatic shotgun that has one or more of the following:

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

    (i) a pistol grip or thumbhole stock;

    (ii) any feature capable of functioning as a protruding grip that can be held by the non-trigger hand;

    (iii) a folding or thumbhole stock;

    (iv) a grenade launcher;

    (v) a fixed magazine with the capacity of more than 5 rounds; or

    (vi) the capacity to accept a detachable magazine.

(G) Any semiautomatic firearm that has the capacity to accept a belt ammunition feeding device.

(H) Any firearm that has been modified to be operable as an assault weapon as defined in this Section.

(I) Any part or combination of parts designed or intended to convert a firearm into an assault weapon, including any combination of parts from which an assault weapon may be readily assembled if those parts are in the possession or under the control of the same person.

(J) All of the following rifles, copies, duplicates, variants, or altered facsimiles with the capability of any such weapon:

    (i) All AK types, including the following:

      (I) AK, AK47, AK47S, AK-74, AKM, AKS, ARM, MAK90, MISR, NHM90, NHM91, SA85, SA93, Vector Arms AK-47, VEPR, WASR-10, and WUM.

      (II) IZHMASH Saiga AK.

Public Act 102-1116

HB5471 Enrolled                                    LRB102 24372 BMS 33606 b

    (III) MAADI AK47 and ARM.

    (IV) Norinco 56S, 56S2, 84S, and 86S.

    (V) Poly Technologies AK47 and AKS.

    (VI) SKS with a detachable magazine.

  (ii) all AR types, including the following:

    (I) AR-10.

    (II) AR-15.

    (III) Alexander Arms Overmatch Plus 16.

    (IV) Armalite M15 22LR Carbine.

    (V) Armalite M15-T.

    (VI) Barrett REC7.

    (VII) Beretta AR-70.

    (VIII) Black Rain Ordnance Recon Scout.

    (IX) Bushmaster ACR.

    (X) Bushmaster Carbon 15.

    (XI) Bushmaster MOE series.

    (XII) Bushmaster XM15.

    (XIII) Chiappa Firearms MFour rifles.

    (XIV) Colt Match Target rifles.

    (XV) CORE Rifle Systems CORE15 rifles.

    (XVI) Daniel Defense M4A1 rifles.

    (XVII) Devil Dog Arms 15 Series rifles.

    (XVIII) Diamondback DB15 rifles.

    (XIX) DoubleStar AR rifles.

    (XX) DPMS Tactical rifles.

    (XXI) DSA Inc. ZM-4 Carbine.

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

   (XXII) Heckler & Koch MR556.

   (XXIII) High Standard HSA-15 rifles.

   (XXIV) Jesse James Nomad AR-15 rifle.

   (XXV) Knight's Armament SR-15.

   (XXVI) Lancer L15 rifles.

   (XXVII) MGI Hydra Series rifles.

   (XXVIII) Mossberg MMR Tactical rifles.

   (XXIX) Noreen Firearms BN 36 rifle.

   (XXX) Olympic Arms.

   (XXXI) POF USA P415.

   (XXXII) Precision Firearms AR rifles.

   (XXXIII) Remington R-15 rifles.

   (XXXIV) Rhino Arms AR rifles.

   (XXXV) Rock River Arms LAR-15 or Rock River Arms LAR-47.

   (XXXVI) Sig Sauer SIG516 rifles and MCX rifles.

   (XXXVII) Smith & Wesson M&P15 rifles.

   (XXXVIII) Stag Arms AR rifles.

   (XXXIX) Sturm, Ruger & Co. SR556 and AR-556 rifles.

   (XL) Uselton Arms Air-Lite M-4 rifles.

   (XLI) Windham Weaponry AR rifles.

   (XLII) WMD Guns Big Beast.

   (XLIII) Yankee Hill Machine Company, Inc. YHM-15 rifles.

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

    (iii) Barrett M107A1.

    (iv) Barrett M82A1.

    (v) Beretta CX4 Storm.

    (vi) Calico Liberty Series.

    (vii) CETME Sporter.

    (viii) Daewoo K-1, K-2, Max 1, Max 2, AR 100, and AR 110C.

    (ix) Fabrique Nationale/FN Herstal FAL, LAR, 22 FNC, 308 Match, L1A1 Sporter, PS90, SCAR, and FS2000.

    (x) Feather Industries AT-9.

    (xi) Galil Model AR and Model ARM.

    (xii) Hi-Point Carbine.

    (xiii) HK-91, HK-93, HK-94, HK-PSG-1, and HK USC.

    (xiv) IWI TAVOR, Galil ACE rifle.

    (xv) Kel-Tec Sub-2000, SU-16, and RFB.

    (xvi) SIG AMT, SIG PE-57, Sig Sauer SG 550, Sig Sauer SG 551, and SIG MCX.

    (xvii) Springfield Armory SAR-48.

    (xviii) Steyr AUG.

    (xix) Sturm, Ruger & Co. Mini-14 Tactical Rifle M-14/20CF.

    (xx) All Thompson rifles, including the following:

      (I) Thompson M1SB.

      (II) Thompson T1100D.

      (III) Thompson T150D.

      (IV) Thompson T1B.

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

       (V) Thompson T1B100D.

       (VI) Thompson T1B50D.

       (VII) Thompson T1BSB.

       (VIII) Thompson T1-C.

       (IX) Thompson T1D.

       (X) Thompson T1SB.

       (XI) Thompson T5.

       (XII) Thompson T5100D.

       (XIII) Thompson TM1.

       (XIV) Thompson TM1C.

    (xxi) UMAREX UZI rifle.

    (xxii) UZI Mini Carbine, UZI Model A Carbine, and UZI Model B Carbine.

    (xxiii) Valmet M62S, M71S, and M78.

    (xxiv) Vector Arms UZI Type.

    (xxv) Weaver Arms Nighthawk.

    (xxvi) Wilkinson Arms Linda Carbine.

  (K) All of the following pistols, copies, duplicates, variants, or altered facsimiles with the capability of any such weapon thereof:

    (i) All AK types, including the following:

      (I) Centurion 39 AK pistol.

      (II) CZ Scorpion pistol.

      (III) Draco AK-47 pistol.

      (IV) HCR AK-47 pistol.

      (V) IO Inc. Hellpup AK-47 pistol.

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

      (VI) Krinkov pistol.

      (VII) Mini Draco AK-47 pistol.

      (VIII) PAP M92 pistol.

      (IX) Yugo Krebs Krink pistol.

   (ii) All AR types, including the following:

      (I) American Spirit AR-15 pistol.

      (II) Bushmaster Carbon 15 pistol.

      (III) Chiappa Firearms M4 Pistol GEN II.

      (IV) CORE Rifle Systems CORE15 Roscoe pistol.

      (V) Daniel Defense MK18 pistol.

      (VI) DoubleStar Corporation AR pistol.

      (VII) DPMS AR-15 pistol.

      (VIII) Jesse James Nomad AR-15 pistol.

      (IX) Olympic Arms AR-15 pistol.

      (X) Osprey Armament MK-18 pistol.

      (XI) POF USA AR pistols.

      (XII) Rock River Arms LAR 15 pistol.

      (XIII) Uselton Arms Air-Lite M-4 pistol.

  (iii) Calico pistols.

  (iv) DSA SA58 PKP FAL pistol.

  (v) Encom MP-9 and MP-45.

  (vi) Heckler & Koch model SP-89 pistol.

  (vii) Intratec AB-10, TEC-22 Scorpion, TEC-9, and TEC-DC9.

  (viii) IWI Galil Ace pistol, UZI PRO pistol.

  (ix) Kel-Tec PLR 16 pistol.

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

(x) All MAC types, including the following:

(I) MAC-10.

(II) MAC-11.

(III) Masterpiece Arms MPA A930 Mini Pistol, MPA460 Pistol, MPA Tactical Pistol, and MPA Mini Tactical Pistol.

(IV) Military Armament Corp. Ingram M-11.

(V) Velocity Arms VMAC.

(xi) Sig Sauer P556 pistol.

(xii) Sites Spectre.

(xiii) All Thompson types, including the following:

(I) Thompson TA510D.

(II) Thompson TA5.

(xiv) All UZI types, including Micro-UZI.

(L) All of the following shotguns, copies, duplicates, variants, or altered facsimiles with the capability of any such weapon thereof:

(i) DERYA Anakon MC-1980, Anakon SD12.

(ii) Doruk Lethal shotguns.

(iii) Franchi LAW-12 and SPAS 12.

(iv) All IZHMASH Saiga 12 types, including the following:

(I) IZHMASH Saiga 12.

(II) IZHMASH Saiga 12S.

(III) IZHMASH Saiga 12S EXP-01.

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

     (IV) IZHMASH Saiga 12K.

     (V) IZHMASH Saiga 12K-030.

     (VI) IZHMASH Saiga 12K-040 Taktika.

   (v) Streetsweeper.

   (vi) Striker 12.

(2) "Assault weapon" does not include:

   (A) Any firearm that is an unserviceable firearm or has been made permanently inoperable.

   (B) An antique firearm or a replica of an antique firearm.

   (C) A firearm that is manually operated by bolt, pump, lever or slide action, unless the firearm is a shotgun with a revolving cylinder.

   (D) Any air rifle as defined in Section 24.8-0.1 of this Code.

   (E) Any handgun, as defined under the Firearm Concealed Carry Act, unless otherwise listed in this Section.

(3) "Assault weapon attachment" means any device capable of being attached to a firearm that is specifically designed for making or converting a firearm into any of the firearms listed in paragraph (1) of this subsection (a).

(4) "Antique firearm" has the meaning ascribed to it in 18 U.S.C. 921(a)(16).

(5) ".50 caliber rifle" means a centerfire rifle capable of firing a .50 caliber cartridge. The term does not include

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

any antique firearm, any shotgun including a shotgun that has
a rifle barrel, or any muzzle-loader which uses black powder
for hunting or historical reenactments.

(6) ".50 caliber cartridge" means a cartridge in .50 BMG
caliber, either by designation or actual measurement, that is
capable of being fired from a centerfire rifle. The term ".50
caliber cartridge" does not include any memorabilia or display
item that is filled with a permanent inert substance or that is
otherwise permanently altered in a manner that prevents ready
modification for use as live ammunition or shotgun ammunition
with a caliber measurement that is equal to or greater than .50
caliber.

(7) "Detachable magazine" means an ammunition feeding
device that may be removed from a firearm without disassembly
of the firearm action, including an ammunition feeding device
that may be readily removed from a firearm with the use of a
bullet, cartridge, accessory, or other tool, or any other
object that functions as a tool, including a bullet or
cartridge.

(8) "Fixed magazine" means an ammunition feeding device
that is permanently attached to a firearm, or contained in and
not removable from a firearm, or that is otherwise not a
detachable magazine, but does not include an attached tubular
device designed to accept, and capable of operating only with,
.22 caliber rimfire ammunition.

(b) Except as provided in subsections (c), (d), and (e),

Public Act 102-1116

HB5471 Enrolled                                    LRB102 24372 BMS 33606 b

on or after the effective date of this amendatory Act of the
102nd General Assembly, it is unlawful for any person within
this State to knowingly manufacture, deliver, sell, import, or
purchase or cause to be manufactured, delivered, sold,
imported, or purchased by another, an assault weapon, assault
weapon attachment, .50 caliber rifle, or .50 caliber
cartridge.

   (c) Except as otherwise provided in subsection (d),
beginning January 1, 2024, it is unlawful for any person
within this State to knowingly possess an assault weapon,
assault weapon attachment, .50 caliber rifle, or .50 caliber
cartridge.

   (d) This Section does not apply to a person's possession
of an assault weapon, assault weapon attachment, .50 caliber
rifle, or .50 caliber cartridge device if the person lawfully
possessed that assault weapon, assault weapon attachment, .50
caliber rifle, or .50 caliber cartridge prohibited by
subsection (c) of this Section, if the person has provided in
an endorsement affidavit, prior to January 1, 2024, under oath
or affirmation and in the form and manner prescribed by the
Illinois State Police, no later than October 1, 2023:

      (1) the affiant's Firearm Owner's Identification Card
   number;

      (2) an affirmation that the affiant: (i) possessed an
   assault weapon, assault weapon attachment, .50 caliber
   rifle, or .50 caliber cartridge before the effective date

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

of this amendatory Act of the 102nd General Assembly; or (ii) inherited the assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge from a person with an endorsement under this Section or from a person authorized under subdivisions (1) through (5) of subsection (e) to possess the assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge; and

  (3) the make, model, caliber, and serial number of the .50 caliber rifle or assault weapon or assault weapons listed in paragraphs (J), (K), and (L) of subdivision (1) of subsection (a) of this Section possessed by the affiant prior to the effective date of this amendatory Act of the 102nd General Assembly and any assault weapons identified and published by the Illinois State Police pursuant to this subdivision (3). No later than October 1, 2023, and every October 1 thereafter, the Illinois State Police shall, via rulemaking, identify, publish, and make available on its website, the list of assault weapons subject to an endorsement affidavit under this subsection (d). The list shall identify, but is not limited to, the copies, duplicates, variants, and altered facsimiles of the assault weapons identified in paragraphs (J), (K), and (L) of subdivision (1) of subsection (a) of this Section and shall be consistent with the definition of "assault weapon" identified in this Section. The Illinois State

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

Police may adopt emergency rulemaking in accordance with
Section 5-45 of the Illinois Administrative Procedure Act.
The adoption of emergency rules authorized by Section 5-45
of the Illinois Administrative Procedure Act and this
paragraph is deemed to be necessary for the public
interest, safety, and welfare.

The affidavit form shall include the following statement
printed in bold type: "Warning: Entering false information on
this form is punishable as perjury under Section 32-2 of the
Criminal Code of 2012. Entering false information on this form
is a violation of the Firearm Owners Identification Card Act."

In any administrative, civil, or criminal proceeding in
this State, a completed endorsement affidavit submitted to the
Illinois State Police by a person under this Section creates a
rebuttable presumption that the person is entitled to possess
and transport the assault weapon, assault weapon attachment,
.50 caliber rifle, or .50 caliber cartridge.

Beginning 90 days after the effective date of this
amendatory Act of the 102nd General Assembly, a person
authorized under this Section to possess an assault weapon,
assault weapon attachment, .50 caliber rifle, or .50 caliber
cartridge shall possess such items only:

(1) on private property owned or immediately
controlled by the person;

(2) on private property that is not open to the public
with the express permission of the person who owns or

Public Act 102-1116

HB5471 Enrolled                                LRB102 24372 BMS 33606 b

immediately controls such property;

    (3) while on the premises of a licensed firearms
dealer or gunsmith for the purpose of lawful repair;

    (4) while engaged in the legal use of the assault
weapon, assault weapon attachment, .50 caliber rifle, or
.50 caliber cartridge at a properly licensed firing range
or sport shooting competition venue; or

    (5) while traveling to or from these locations,
provided that the assault weapon, assault weapon
attachment, or .50 caliber rifle is unloaded and the
assault weapon, assault weapon attachment, .50 caliber
rifle, or .50 caliber cartridge is enclosed in a case,
firearm carrying box, shipping box, or other container.

Beginning on January 1, 2024, the person with the
endorsement for an assault weapon, assault weapon attachment,
.50 caliber rifle, or .50 caliber cartridge or a person
authorized under subdivisions (1) through (5) of subsection
(e) to possess an assault weapon, assault weapon attachment,
.50 caliber rifle, or .50 caliber cartridge may transfer the
assault weapon, assault weapon attachment, .50 caliber rifle,
or .50 caliber cartridge only to an heir, an individual
residing in another state maintaining it in another state, or
a dealer licensed as a federal firearms dealer under Section
923 of the federal Gun Control Act of 1968. Within 10 days
after transfer of the weapon except to an heir, the person
shall notify the Illinois State Police of the name and address

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

of the transferee and comply with the requirements of
subsection (b) of Section 3 of the Firearm Owners
Identification Card Act. The person to whom the weapon or
ammunition is transferred shall, within 60 days of the
transfer, complete an affidavit required under this Section. A
person to whom the weapon is transferred may transfer it only
as provided in this subsection.

Except as provided in subsection (e) and beginning on
January 1, 2024, any person who moves into this State in
possession of an assault weapon, assault weapon attachment,
.50 caliber rifle, or .50 caliber cartridge shall, within 60
days, apply for a Firearm Owners Identification Card and
complete an endorsement application as outlined in subsection
(d).

Notwithstanding any other law, information contained in
the endorsement affidavit shall be confidential, is exempt
from disclosure under the Freedom of Information Act, and
shall not be disclosed, except to law enforcement agencies
acting in the performance of their duties.

(e) The provisions of this Section regarding the purchase
or possession of assault weapons, assault weapon attachments,
.50 caliber rifles, and .50 cartridges, as well as the
provisions of this Section that prohibit causing those items
to be purchased or possessed, do not apply to:

(1) Peace officers, as defined in Section 2-13 of this
Code.

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

    (2) Qualified law enforcement officers and qualified
retired law enforcement officers as defined in the Law
Enforcement Officers Safety Act of 2004 (18 U.S.C. 926B
and 926C) and as recognized under Illinois law.

    (3) Acquisition and possession by a federal, State, or
local law enforcement agency for the purpose of equipping
the agency's peace officers as defined in paragraph (1) or
(2) of this subsection (e).

    (4) Wardens, superintendents, and keepers of prisons,
penitentiaries, jails, and other institutions for the
detention of persons accused or convicted of an offense.

    (5) Members of the Armed Services or Reserve Forces of
the United States or the Illinois National Guard, while
performing their official duties or while traveling to or
from their places of duty.

    (6) Any company that employs armed security officers
in this State at a nuclear energy, storage, weapons, or
development site or facility regulated by the federal
Nuclear Regulatory Commission and any person employed as
an armed security force member at a nuclear energy,
storage, weapons, or development site or facility
regulated by the federal Nuclear Regulatory Commission who
has completed the background screening and training
mandated by the rules and regulations of the federal
Nuclear Regulatory Commission and while performing
official duties.

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

(7) Any private security contractor agency licensed under the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 that employs private security contractors and any private security contractor who is licensed and has been issued a firearm control card under the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 while performing official duties.

The provisions of this Section do not apply to the manufacture, delivery, sale, import, purchase, or possession of an assault weapon, assault weapon attachment, .50 caliber rifle, or .50 caliber cartridge or causing the manufacture, delivery, sale, importation, purchase, or possession of those items:

(A) for sale or transfer to persons authorized under subdivisions (1) through (7) of this subsection (e) to possess those items;

(B) for sale or transfer to the United States or any department or agency thereof; or

(C) for sale or transfer in another state or for export.

This Section does not apply to or affect any of the following:

(i) Possession of any firearm if that firearm is sanctioned by the International Olympic Committee and by USA Shooting, the national governing body for

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

international shooting competition in the United States,
but only when the firearm is in the actual possession of an
Olympic target shooting competitor or target shooting
coach for the purpose of storage, transporting to and from
Olympic target shooting practice or events if the firearm
is broken down in a nonfunctioning state, is not
immediately accessible, or is unloaded and enclosed in a
firearm case, carrying box, shipping box, or other similar
portable container designed for the safe transportation of
firearms, and when the Olympic target shooting competitor
or target shooting coach is engaging in those practices or
events. For the purposes of this paragraph (8), "firearm"
has the meaning provided in Section 1.1 of the Firearm
Owners Identification Card Act.

   (ii) Any nonresident who transports, within 24 hours,
a weapon for any lawful purpose from any place where the
nonresident may lawfully possess and carry that weapon to
any other place where the nonresident may lawfully possess
and carry that weapon if, during the transportation, the
weapon is unloaded, and neither the weapon nor any
ammunition being transported is readily accessible or is
directly accessible from the passenger compartment of the
transporting vehicle. In the case of a vehicle without a
compartment separate from the driver's compartment, the
weapon or ammunition shall be contained in a locked
container other than the glove compartment or console.

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

    (iii) Possession of a weapon at an event taking place at the World Shooting and Recreational Complex at Sparta, only while engaged in the legal use of the weapon, or while traveling to or from that location if the weapon is broken down in a nonfunctioning state, is not immediately accessible, or is unloaded and enclosed in a firearm case, carrying box, shipping box, or other similar portable container designed for the safe transportation of firearms.

    (iv) Possession of a weapon only for hunting use expressly permitted under the Wildlife Code, or while traveling to or from a location authorized for this hunting use under the Wildlife Code if the weapon is broken down in a nonfunctioning state, is not immediately accessible, or is unloaded and enclosed in a firearm case, carrying box, shipping box, or other similar portable container designed for the safe transportation of firearms. By October 1, 2023, the Illinois State Police, in consultation with the Department of Natural Resources, shall adopt rules concerning the list of applicable weapons approved under this subparagraph (iv). The Illinois State Police may adopt emergency rules in accordance with Section 5-45 of the Illinois Administrative Procedure Act. The adoption of emergency rules authorized by Section 5-45 of the Illinois Administrative Procedure Act and this paragraph is deemed

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

to be necessary for the public interest, safety, and
welfare.

(v) The manufacture, transportation, possession, sale,
or rental of blank-firing assault weapons and .50 caliber
rifles, or the weapon's respective attachments, to persons
authorized or permitted, or both authorized and permitted,
to acquire and possess these weapons or attachments for
the purpose of rental for use solely as props for a motion
picture, television, or video production or entertainment
event.

Any person not subject to this Section may submit an
endorsement affidavit if the person chooses.

(f) Any sale or transfer with a background check initiated
to the Illinois State Police on or before the effective date of
this amendatory Act of the 102nd General Assembly is allowed
to be completed after the effective date of this amendatory
Act once an approval is issued by the Illinois State Police and
any applicable waiting period under Section 24-3 has expired.

(g) The Illinois State Police shall take all steps
necessary to carry out the requirements of this Section within
by October 1, 2023.

(h) The Department of the State Police shall also develop
and implement a public notice and public outreach campaign to
promote awareness about the provisions of this amendatory Act
of the 102nd General Assembly and to increase compliance with
this Section.

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

(720 ILCS 5/24-1.10 new)

Sec. 24-1.10. Manufacture, delivery, sale, and possession of large capacity ammunition feeding devices.

(a) In this Section:

"Handgun" has the meaning ascribed to it in the Firearm Concealed Carry Act.

"Long gun" means a rifle or shotgun.

"Large capacity ammunition feeding device" means:

(1) a magazine, belt, drum, feed strip, or similar device that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition for long guns and more than 15 rounds of ammunition for handguns; or

(2) any combination of parts from which a device described in paragraph (1) can be assembled.

"Large capacity ammunition feeding device" does not include an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition. "Large capacity ammunition feeding device" does not include a tubular magazine that is contained in a lever-action firearm or any device that has been made permanently inoperable.

(b) Except as provided in subsections (e) and (f), it is unlawful for any person within this State to knowingly manufacture, deliver, sell, purchase, or cause to be

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

manufactured, delivered, sold, or purchased a large capacity
ammunition feeding device.

(c) Except as provided in subsections (d), (e), and (f),
and beginning 90 days after the effective date of this
amendatory Act of the 102nd General Assembly, it is unlawful
to knowingly possess a large capacity ammunition feeding
device.

(d) Subsection (c) does not apply to a person's possession
of a large capacity ammunition feeding device if the person
lawfully possessed that large capacity ammunition feeding
device before the effective date of this amendatory Act of the
102nd General Assembly, provided that the person shall possess
such device only:

(1) on private property owned or immediately
controlled by the person;

(2) on private property that is not open to the public
with the express permission of the person who owns or
immediately controls such property;

(3) while on the premises of a licensed firearms
dealer or gunsmith for the purpose of lawful repair;

(4) while engaged in the legal use of the large
capacity ammunition feeding device at a properly licensed
firing range or sport shooting competition venue; or

(5) while traveling to or from these locations,
provided that the large capacity ammunition feeding device
is stored unloaded and enclosed in a case, firearm

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

carrying box, shipping box, or other container.

A person authorized under this Section to possess a large capacity ammunition feeding device may transfer the large capacity ammunition feeding device only to an heir, an individual residing in another state maintaining it in another state, or a dealer licensed as a federal firearms dealer under Section 923 of the federal Gun Control Act of 1968. Within 10 days after transfer of the large capacity ammunition feeding device except to an heir, the person shall notify the Illinois State Police of the name and address of the transferee and comply with the requirements of subsection (b) of Section 3 of the Firearm Owners Identification Card Act. The person to whom the large capacity ammunition feeding device is transferred shall, within 60 days of the transfer, notify the Illinois State Police of the person's acquisition and comply with the requirements of subsection (b) of Section 3 of the Firearm Owners Identification Card Act. A person to whom the large capacity ammunition feeding device is transferred may transfer it only as provided in this subsection.

Except as provided in subsections (e) and (f) and beginning 90 days after the effective date of this amendatory Act of the 102nd General Assembly, any person who moves into this State in possession of a large capacity ammunition feeding device shall, within 60 days, apply for a Firearm Owners Identification Card.

(e) The provisions of this Section regarding the purchase

Public Act 102-1116

HB5471 Enrolled                              LRB102 24372 BMS 33606 b

or possession of large capacity ammunition feeding devices, as
well as the provisions of this Section that prohibit causing
those items to be purchased or possessed, do not apply to:

    (1) Peace officers as defined in Section 2-13 of this
Code.

    (2) Qualified law enforcement officers and qualified
retired law enforcement officers as defined in the Law
Enforcement Officers Safety Act of 2004 (18 U.S.C. 926B
and 926C) and as recognized under Illinois law.

    (3) A federal, State, or local law enforcement agency
for the purpose of equipping the agency's peace officers
as defined in paragraph (1) or (2) of this subsection (e).

    (4) Wardens, superintendents, and keepers of prisons,
penitentiaries, jails, and other institutions for the
detention of persons accused or convicted of an offense.

    (5) Members of the Armed Services or Reserve Forces of
the United States or the Illinois National Guard, while
their official duties or while traveling to or from their
places of duty.

    (6) Any company that employs armed security officers
in this State at a nuclear energy, storage, weapons, or
development site or facility regulated by the federal
Nuclear Regulatory Commission and any person employed as
an armed security force member at a nuclear energy,
storage, weapons, or development site or facility
regulated by the federal Nuclear Regulatory Commission who

Public Act 102-1116

HB5471 Enrolled                           LRB102 24372 BMS 33606 b

has completed the background screening and training
mandated by the rules and regulations of the federal
Nuclear Regulatory Commission and while performing
official duties.

(7) Any private security contractor agency licensed
under the Private Detective, Private Alarm, Private
Security, Fingerprint Vendor, and Locksmith Act of 2004
that employs private security contractors and any private
security contractor who is licensed and has been issued a
firearm control card under the Private Detective, Private
Alarm, Private Security, Fingerprint Vendor, and Locksmith
Act of 2004 while performing official duties.

(f) This Section does not apply to or affect any of the
following:

(1) Manufacture, delivery, sale, importation,
purchase, or possession or causing to be manufactured,
delivered, sold, imported, purchased, or possessed a large
capacity ammunition feeding device:

(A) for sale or transfer to persons authorized
under subdivisions (1) through (7) of subsection (e)
to possess those items;

(B) for sale or transfer to the United States or
any department or agency thereof; or

(C) for sale or transfer in another state or for
export.

(2) Sale or rental of large capacity ammunition

Public Act 102-1116

HB5471 Enrolled                                    LRB102 24372 BMS 33606 b

    feeding devices for blank-firing assault weapons and .50
caliber rifles, to persons authorized or permitted, or
both authorized and permitted, to acquire these devices
for the purpose of rental for use solely as props for a
motion picture, television, or video production or
entertainment event.

    (g) Sentence. A person who knowingly manufactures,
delivers, sells, purchases, possesses, or causes to be
manufactured, delivered, sold, possessed, or purchased in
violation of this Section a large capacity ammunition feeding
device capable of holding more than 10 rounds of ammunition
for long guns or more than 15 rounds of ammunition for handguns
commits a petty offense with a fine of $1,000 for each
violation.

    (h) The Department of the State Police shall also develop
and implement a public notice and public outreach campaign to
promote awareness about the provisions of this amendatory Act
of the 102nd General Assembly and to increase compliance with
this Section.


    Section 95. No acceleration or delay. Where this Act makes
changes in a statute that is represented in this Act by text
that is not yet or no longer in effect (for example, a Section
represented by multiple versions), the use of that text does
not accelerate or delay the taking effect of (i) the changes
made by this Act or (ii) provisions derived from any other

Public Act 102-1116

HB5471 Enrolled                          LRB102 24372 BMS 33606 b

Public Act.

    Section 97. Severability. The provisions of this Act are severable under Section 1.31 of the Statute on Statutes.

    Section 99. Effective date. This Act takes effect upon becoming law.