## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CALEB BARNETT, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-209-SPM** |
| | ) | |
| **KWAME RAOUL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

-----------------------------------------------------------------------------------------

| | | |
|---|---|---|
| **DANE HARREL, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-141-SPM** |
| | ) | |
| **KWAME RAOUL, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

-----------------------------------------------------------------------------------------

| | | |
|---|---|---|
| **JEREMY W. LANGLEY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:23-cv-192-SPM** |
| | ) | |
| **BRENDAN KELLY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

-----------------------------------------------------------------------------------------

**MOTION FOR SUMMARY JUDGMENT COUNTS IV AND VI**

Comes now Plaintiffs Langley, Jones and Wilson, by and through their attorneys, Thomas G. Maag and the Maag Law Firm, LLC, and moves for partial summary judgment, on Counts IV and VI of their Complaint, as follows:

## INTRODUCTION

This Court previously heard motions for preliminary injunction as to the Second Amendment claims in this case, specifically reserving the remaining claims in this case for future ruling.  One of those reserved claims was the vagueness claims.  Granted, the preliminary injunction issue is presently pending in a higher court, which appears headed on a fast train to Washington D.C.  However, this case is not stayed.  The time to hear these claims is now.

## APPLICABLE LAW

Under the due process clause of the Fourteenth Amendment, a criminal statute is void for vagueness if its prohibitions are not clearly defined. *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S. Ct. 2294, 2298, 33 L. Ed. 2d 222 (1972). Vague laws may offend one of several values.

First, vague laws may trap innocent persons by failing to provide fair , warning. *Id.*

Second, vague laws create the risk of arbitrary and discriminatory enforcement by police, judges and juries. *Id.*

Third, a vague law may infringe upon the exercise of other recognized constitutional rights, and in particular some may have a chilling effect on guaranteed rights. *Id.* at 109, 92 S. Ct. at 2299.

The well-established test is that a criminal statute is void for vagueness if persons of ordinary intelligence are unable to ascertain what actions are illegal. *Schad v. Arizona,* ___ U.S. ___, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991); *Grayned,* 408 U.S. at 108, 92 S. Ct. at

2298; *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 127, 70 L. Ed. 322 (1926). Thus, "[T]he complainant must prove that the enactment is vague `not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.'" *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495 n. 7, 102 S. Ct. 1186, 1191 n. 7, 71 L. Ed. 2d 362 (1982) (quoting *Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S. Ct. 1686, 1688, 29 L. Ed. 2d 214 (1971)).

In this case, *multiple* portions of the statute are so vague and ambiguous and to be indecipherable, not just by lay persons, but even by experts.  While more exist, and if this case survives long enough to require a trial, Plaintiffs will show that most of the act is so vague and ambiguous as to call into serious question the competence in the subject matter of the persons that wrote it, Plaintiffs in this motion will focus on two. They include:

1. Ammunition capacity issues for feeding devices, and

2. (J) All of the following rifles, copies, duplicates, variants, or altered facsimiles with the capability of any such weapon:

**APPLICABLE UNDISPUTED FACTS**

**Ammunition Feeding Devices**

The challenged statute prohibits possession and use of "handgun" magazines over 15 rounds and rifle and shotgun magazines over 10 rounds.  It would appear from the plain text of the statute that magazines (or for that matter any other kind of ammunition feeding device) that are for firearms other than "handguns" "rifles" or "shotguns" are not even regulated, possibly because the drafters of the statute did not realize that firearms other than rifles, shotguns and handguns actually exist.

"Handgun" is defined under the act as it is defined in the Illinois Concealed Carry Act, and incorporated by reference in this statute, as meaning

> "any device which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas, or escape of gas that is designed to be held and fired by the use of a single hand. "Handgun" does not include various other devices.

Neither "rifle" nor "shotgun" is defined either under the challenged act, or in a pre existing relevant Illinois statute.  However, an Illinois Appellate case gives some guidance. *People v. Shreffler,* 38 NE 3d 145 - Ill: Appellate Court 2015, which states "When the statute contains undefined terms, it is entirely appropriate to employ a dictionary to ascertain the plain and ordinary meaning of those terms.", citing in turn to *People v. Davison*, 233 Ill.2d 30, 40, 329 Ill.Dec. 347, 906 N.E.2d 545, 551 (2009). Merriam-Webster's Collegiate Dictionary is used in the *Shreffler* case.

Merriam-Webster's online dictionary defines both "rifle" and "shotgun" as "shoulder fired" arms.  In other words, arms fitted with shoulder stocks.  Under federal definitions of "rifle" and "shotgun" contained in both the National Firearms Act, and the Gun Control Act, while fine points may vary, it is clear that under these federal definitions, which candidly are not controlling over state law, classify rifles and shotguns as "shoulder fired" arms, which shows a consistency with the dictionary definition.  See 26 U.S. Code § 5845(c) and (d).  See also 18 U.S. Code § 921(a)(5).  It is unclear whether or not a "machinegun" under state law can also be a "rifle" or "shotgun", but rifles and shotguns are only shoulder firearm arms.

Examples of various rifles and shotguns (i.e. long guns) are as follows:



Pump Action Remington 870 DM Shotgun



Semi automatic, detachable magazine Walther K43 Rifle, circa 1943 to 1945

What is notable about each, is they have shoulder stocks, consistent with the definitions.

A "handgun" has no shoulder stock, and is designed to be held in one hand.  A classic example is the Beretta Model M9 pistol, shown below.



Examples of firearms that are not handguns, rifles or shotguns would include firearms, like the following:



Remington Tac-14DM



1919A4 Semi Auto



Japanese Type 3, Feed Strip Fed MG

The Japanese Type 3, and firearms of its kind, feed from so called "feed strips", which notably, the State indicated in one of its filings are no longer used or produced.  Nonetheless, they are available on the open market for collectors of such items.  A feed strip of this type, also used historically in Hotchkiss designed firearms, looks like this:



The Remington 870 DM, whether in shotgun configuration, or "other" configuration, feeds ammunition from a detachable magazine, such as is shown below.  (Ex. L, para 10)



The 1919A4 traditionally feeds from a cloth belt, like that shown below.  (Ex M, Para. 4).



Some 1919 firearms have been "updated" to fire so called "disintegrating links", like shown below here. (Ex. M. Para. 5)



Although it is not clear how one is to know how to discern what a given magazine or other ammunition feeding device is supposed to be classified as, as is not clear what kind of firearm a given device was designed for, or possibly can be used in.

The exact definition in the statute is:

"Large capacity ammunition feeding device" means:

> (1) a magazine, belt, drum, feed strip, or similar device that has a capacity of, or that can be readily restored or converted to accept, more than 10 rounds of ammunition for long guns and more than 15 rounds of ammunition for handguns;
>
> …

Under the statute:

(c) Except as provided in subsections (d), (e), and (f), and beginning 90 days after the effective date of this amendatory Act of the 102nd General Assembly, it is unlawful to knowingly possess a large capacity ammunition feeding device.

Under the ban, as defined, a "long gun" means a "rifle" or "shotgun"

Neither the actual Act, nor pre-existing state law define either "rifle" or "shotgun." The ban also does not appear to even reference ammunition feeding devices for firearms other than handguns, rifles or shotguns.

### It Is Objectively Impossible To Differentiate a Handgun Magazine From a Long Gun Magazine From a Magazine For an Other Firearm

It is objectively impossible to differentiate a handgun magazine from a long gun. The reason is, multiple long guns use the exact same magazines as handguns. Specific examples will be shown:



The above depicts, starting clockwise, top from left, a US. M9 Beretta Pistol, caliber 9mm, a Beretta factory 15 round magazine for said M9 Pistol, and a Beretta CX4 rifle, in 9mm, that uses the same magazine.  (Ex. L, para. 3, Ex M, para. 6).

The Beretta products are not alone in this circumstance.  The pistol, 9mm caliber, Glock 19, standard capacity 15 rounds, similarly uses the exact same magazine as the Kel Tec Sub 2000 9mm rifle.  Ex. A.

These are not unique examples.  Take the Ruger brand, specifically the LC Carbine and the Ruger 5.7 Pistol.  They use the exact same magazines.  Ex. B.  The same is true with the Ruger PC carbine, which will use magazines for the Ruger American pistol, as well as Glock pistols.  Ex. C.

This fact is not limited to 9mm caliber firearms.  Other firearms, often in the .223 Remington / 5.56mm caliber, use magazines fitting proposed NATO standard 4179, sometimes called AR15 or M16 type magazines, are used in both handguns (such as the below pistol) and



long guns such as the U.S. military M16 rifle / M4 carbine series (which is related to the AR15), along with the Mossberg MVP, Remington Model 7615P, Ruger American Ranch and Predator, as well as the AR15 style rifle (like shown below)(Ex. N).



Whether talking about nearly any commonly used detachable magazine for any reasonably popular firearm, there are both handguns and long guns available commercially that will use both magazines. (Ex. L, paras 8 through 12, M, para. 6). This is true whether or not the magazines were originally designed for use in pistols, rifles, or for that matter, machineguns, or firearms that are neither rifles, pistols, shotguns or machineguns. Id.

Notably, the ban does NOT prohibit *putting* an over 10 round magazine into a rifle, nor does it prohibit possession of a rifle with a compatible over 10 round magazine, rather it prohibits *possession* of a "long gun" magazine of over 10 rounds, period, and *possession* of a handgun magazine of over 15 rounds, period. As it is demonstrably impossible to know whether

a given magazine is for a handgun or a long gun, or for that matter, a machinegun, or some other kind of firearm, even if you know the design history of the magazine. (Ex. L, para. 8, M, para. 6).

Knowing that, in the actual real world, it is impossible to determine whether a given ammunition feeding device is for a handgun, a long gun, or some other kind of gun, the ban on over 10 round rifle or shotgun magazines is unconstitutionally vague, as no reasonable person, or for that matter, the leading firearms expert in the world, can discern a rifle or shotgun magazine from a handgun magazine or an Other magazine.  The following magazines fit in both "handguns" and "rifles", as well as "Other" firearms.

Take the World War II classic M1 Carbine 15 round magazine, of which tens of millions are owned by everyday Americans, and have been for nearly 80 years.  Rifle version, pistol version, and (lawfully possessed) fully automatic M2 versions are common as dirt in this Country, and have been for nearly 80 years.  Is the below 15 round magazine legal, or not?



Does its legality matter if you own an M1 rifle, an M1 style pistol, or a registered M2?

How is the owner, or prospective purchases or seller of such ammunition feeding devices supposed to know whether the state is going to classify them as Handgun, Rifle, Shotgun or

Other.  Under the statute, how is one supposed to know if it is legal to use a 14 round "Handgun" magazine in a Rifle?

If the Court would care to have an evidentiary hearing, in which many of the above referenced firearms, and ammunition feeding devices can be demonstrated in person, Plaintiffs and their counsel are willing to demonstrate same, and the vagueness argued above.

**COUNT IV, The Duplicate Firearm Section is Unconstitutionally Vague**

The same basic vagueness law applies to this challenge as the magazine issue.  Quite simply, there are no objective standards as to what is a copy.  Plaintiff plows no new ground on this, as the 6th Circuit did the legwork thirty years ago.  See *Springfield Armory, Inc. v. City of Columbus*, 29 F. 3d 250 - Court of Appeals, 6th Circuit 1994.

In the *Springfield Armory* case,

"The ordinance defines "assault weapon" simply by naming forty-six individual models of rifles, shotguns and pistols, listed by model name and manufacturer, and then adds within the prohibition other models by the same manufacturer with the same action design that have slight modifications or enhancements of firearms listed ... provided the caliber exceeds .22 rimfire.

…     No statement of purpose is added to the ordinance explaining the reason for outlawing some but not all assault weapons of the same type. Nor is there an explanation for drafting the ordinance in terms of brand name rather than generic type or category of weapon. Nor does the ordinance define "same action design" or "slight modifications." We do not know whether a "model by the same manufacturer" that fires twice as fast or twice as many bullets, or half as fast with half as many bullets, or some other combination of changes is a "slight modification" of the "same action design.

Plaintiffs, gun manufacturers and dealers, say that they are unable to comprehend the meaning of the "slight modifications" provision or the purpose of the ordinance and hence cannot know in advance which sales the ordinance purports to prohibit. They argue that the ordinance does not adequately notify the citizenry regarding what conduct is prohibited and will necessarily give rise to arbitrary enforcement. The only clear restriction on the range of modifications which may be considered slight is that the caliber of a modified weapon must exceed .22. Does this mean that any other change in caliber is necessarily slight? What about the range of fire and the magazine capacity of a weapon? Is a doubling, tripling or halving of these measurements a slight modification? Because there is no discernable purpose underlying the slight modifications requirement, the reach of the provision defies definition."

In the present case, the definition of the prohibited firearms, per section J, includes:

> (J) All of the following rifles, copies, duplicates, variants, or altered facsimiles with the capability of any such weapon:

This section prohibits, *inter alia*

> (i) All AK types, including the following:
> (I) AK, AK47, AK47S, AK-74, AKM, AKS, AR[ MAK90, MISR, NHM90, NHM91, SA85, SA93, Vector Ar[ AK-47, VEPR, WASR-10, and WUM.
> (II) IZHMASH Saiga AK.

<u>(III) MAADI AK47 and ARM.</u>

<u>(IV) Norinco 56S, 56S2, 84S, and 86S.</u>

<u>(V) Poly Technologies AK47 and AKS.</u>

<u>(VI) SKS with a detachable magazine.</u>

The above is utterly undecipherable, and plainly written by persons with no actual knowledge of firearms, rather, it is just a list of guns that someone, without actual firearms knowledge, through might be similar, and even at that, failed.  And that is simply with the first category of listed rifles.

Lets *assume*, that by "AK type" that the Illinois General Assembly meant something of the basic pattern of the 1947 Soviet Avtomat Kalashnikov select fire "rifle", as that is probably true.  See Ex. D.



Such an original style Soviet made, select fire rifle, made in the 1950s, is depicted above. In the United States, in its select fire form, this is a rare collectable, most of which that are legally owned, were smuggled into the U.S. by returning Vietnam Veterans, illegally (as soldiers throughout American history have done, bringing back war trophies, whether permitted or not),

and registered in a one month 1968 Amnesty.  These retail for more than the cost of most automobiles, though throughout the world, more than 100,000,000 were manufactured.  (Ex. D).

One might be forgiven for assuming that an "AK Type"  had something anything to do with the original Soviet AK47, but apparently no.  Listed by the State in its list of "AK variants" is

## (VI) SKS with a detachable magazine.

An SKS is s completely different firearm than the AK  (Exs. D, K, L paras. 13-16) .  A photograph of an SKS with detachable magazine is shown below.



It does not take a firearms expert to see that the two are not the same.  Nor in fact, is an SKS a variant of an AK47 or similar rifle.  The operating systems are completely different, and no parts between the two interchange. (Id).  In fact, the operating system of the AK is almost directly lifted out of the U.S. M1 Garand rifle, and bears nothing whatsoever in common with the SKS. (Ex. 13).  No ordinary person, or for that matter, even a firearms expert, would call the SKS or the AK series copies or variants of each other, but that's what the experts at the Illinois General Assembly wrote, passed and expected citizens to decipher and comply with.

What about the Czech made vz58 (see below), which again, uses a completely different operating system than the AK, as well as a different operating system than the SKS. (Ex. L, para.

17).  The magazines are not even interchangeable, of for that matter, made of the same metal.

How is an ordinary person supposed to know if that is an AK type?



Or a .22LR caliber clone of a WWII German STG 44 (shown below), with again, no parts

that interchange with any of the above, and which used a completely different operating system.



(Ex. L, paras. 17, 18)

Or how about the below rifle, the "Kommander 103" rifle, which likely actually uses



some actual AK47 pattern components, but without a pistol grip stock.  Literally, how is one to

know whether a given firearm is an AK variant, or not, when no objective standards are set for

determination of same.  And how far different must the firearm be to be legal?

The Remington model 8, which pre-dated the AK47 by decades used the exact same

safety selector as the AK47. (see below).  Some might say that Kalashnikov copied it.  Is the

Remington Model 8 an AK variant?  It is s semi-automatic, takes a detachable magazine, and used the same kind of safety selector lever.



How about the M1 Garand, designed in the 1930s?  Is that an AK variant?(see below).



The rotating bolt, gas system and operating rod of the AK47 and the M1 Garand, if shown next to each other (and if the Court cares to see actual examples of each, same can be shown to the Court), they are functionally identical, simply being inverted in the AK47 as compared to the M1, and of different size. (Ex. L, para 13).  Kalashnikov's original prototypes had even more in common with the M1 than the final AK47 version.  Is the M1 an AK variant?

Finally, how about the Mossberg .22LR Blaze 47 (see below), which again sort of



looks like an AK47, from a distance, but in .22LR, with a completely different operating system, and method of construction. (Ex. M, para. 7)  Its kind of like putting a replacement fiberglass body on a 1972 VW Beetle, and claiming you have a Lamborghini.

The very next category on this list, that is the second category, fares no better   Just what is an "AR Type"?

Less one think that is reserved for only the AR15, or even its derivatives, one would be wrong.  Listed, as an AR Type, is such firearms as the "AR15", "Armalite M15 .22 LR Carbine", Beretta AR70 and Rock River Arms AR47.

First, below, is a Colt AR-15 rifle, focused on the markings.



Next is the Armalite M15 .22LP Carbine, shown below.



While clearly designed to look like, an early prototype AR15 type rifle (complete with charging handle under the carry handle), it, in fact is like the VW bug with a Lamborghini skin, it just isn't.  No internal parts interchange, and the gun fires .22 rimfire, using a direct blowback operating system. (Ex. L, para. 21)

The Beretta AR70 (shown below) is even more different. (Ex. L, para. 22).



No person with any knowledge of firearms would classify the Beretta AR70 as an AR15 derivative.  The AR15 is forged and machined aluminum.  The AR70 is stamped sheet metal steel, and no parts interchange.  The AR70 is a derivative of a SIG design. (Ex. L, para. 22)

As to the AR47 listed, there is no such firearm.  Instead there is an LAR47 (Ex. L, Para. 23).

This is a firearm, sort of based on an AR15, but which was altered to accept ak47 type magazines, and fire the 7.62x39mm round.  The lower receiver, as are many internal parts are different and not interchangeable with the AR15. (Ex. L, para. 23).

How about the following actual AR model number firearms: AR7 (See Ex. E, and F), the AR24 (See Ex. E and G), the AR30 (See Ex. E and H).  Are these firearms banned,  No-one would ever confuse them with the AR15 or its derivatives, but who really knows?

So the question becomes, if the firearms classified as "copies, duplicates, variants, or altered facsimiles with the capability of any such weapon" are banned, how is someone supposed to know it?  Is the Wilson WC-15 or the Armalite AR24 banned?  Under what objective standards is one to know?

The Sixth Circuit asked, "How is the ordinary consumer to determine which changes may be considered slight?" *Springfield Armory, Inc. v. City of Columbus*, 29 F. 3d 250, 353 - Court of Appeals, 6th Circuit 1994. Here, how is an average consumer to determine whether a given firearm is an "AK type" of a variant thereof, or a copy, duplicate of altered facsimile thereof?

As also found in *Springfield Armory,*

*"*Nothing in the ordinance provides sufficient information to enable a person of average intelligence to determine whether a weapon they wish to purchase has a design history of the sort which would bring it within this ordinance's coverage. See *Robertson v. Denver*, 874 P.2d 325, 335 (Colo. 1994) (holding similar provision invalid because "ascertaining the design history and action design of a pistol is not something that can be expected of a person of common intelligence.")"

Finally, as stated in *Springfield Armory,* These vagueness problems are not difficult to remedy. The subject matter does allow for more exactness. It is not a case in which greater specificity would interfere with practical administration. See Kolender, 461 U.S. at 361, 103 S.Ct. at 1860. To the contrary, as noted in *Springfield Armory,* the State has many options for effectively pursuing its stated goals without running afoul of due process, of course assuming compliance with the Second Amendment. Other gun control laws which seek to outlaw assault weapons provide a general definition of the type of weapon banned, and the State of Illinois can do the same, of course within Second Amendment confines.

## SEVERABILITY

The challenged action does not appear to have a severability clause. In arguing the Second Amendment portion of the challenge, the State elected to argue that the entire Act rose or

fell as one.  Plaintiffs agree.  If this Act is found to be unconstitutionally vague, the entire act should be stricken.

## CONCLUSION

The bottom line is that much of the challenged statute is incomprehensible by persons of ordinary intelligence, providing no objective standards, and requiring much guesswork to try to comply with, which even if *arguendo* the Act were lawful under Second Amendment standards (which it is not), it provides a chilling effect on the right of law abiding firearm owners, as well as sellers, who, unsure of what it legal, or not, simply refuse to sell to Illinois addresses or residents, or refuse to buy what may well be legal items, based on fear of felony prosecution under an indecipherable statute.

As relates to ammunition feeding devices, such as magazines, the Act purports to regulate based on whether the device is for a handgun, a long gun, or Other.  There is no discernable difference in an ammunition feeding devices that would enable anyone, even an expert, to say, in isolation, such a devices is for a long gun, a handgun or an other.

Likewise, there are no objective standards by which an ordinary citizen can discern whether something is a copy, duplicate, variant or altered facsimile.

To that end, the statute is unconstitutionally vague, and this Court should declare it to be so, and enjoin its enforcment.

Dated:  5-19-2023                            Respectfully Submitted,
                                             Jeremy Langley, et al

                                             By:s/Thomas G. Maag
                                             Thomas G. Maag
                                             Peter J. Maag
                                             Maag Law Firm, LLC
                                             22 West Lorena Avenue
                                             Wood River, IL  62095
                                             618-973-8679
                                             tmaag@maaglaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed, using the CM/ECF system, which will send notification to all registered users:

Dated:  5-19-23                              S/Thomas G. Maag